**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| LEE MARVIN HARRIS, SR.,<br><br>          Plaintiff,<br><br>   v.<br><br>THE TOWN OF SOUTHERN PINES, Officer JASON PERRY, Officer SEAN LOWERY, and Officer KYLE MARSH, sued in their individual capacities, and Chief of Police ROBERT TEMME, sued in his official and individual capacity,<br><br>        Defendants. | **COMPLAINT**<br>**(Jury Trial Demanded)**<br><br>**No. 21-CV-955** |

NOW COMES Plaintiff, demanding a jury trial and alleging the following against the

Defendants:

## INTRODUCTION

1.  Plaintiff Lee Marvin Harris, Sr., is a Minister, Veteran of the United States Armed Services,

    and a retired North Carolina Department of Public Safety Officer.

2.  Mr. Harris has lived in Moore County since 1998 and in his role as a Minister has often

    advocated on behalf of individuals facing criminal charges or investigation.

3.  Mr. Harris has made Internal Affairs complaints against members of the Southern Pines

    Police Department ("SPPD"), including Defendant Officer Jason Perry.

4.  In 2017, SPPD began a long-term drug investigation into Mr. Harris's son, Lee Harris, Jr

    ("Harris, Jr.").

5.  In 2018, as part of this investigation, Mr. Harris was wrongfully arrested on fabricated

    cocaine trafficking charges by SPPD Officers Jason Perry, Sean Lowery, and Kyle Marsh.

6.   The SPPD Officers knew Mr. Harris was innocent, yet fabricated evidence against him as retaliation for Mr. Harris's prior complaints against Defendants, and in an attempt to coerce him to inform on his son's alleged drug trafficking.

7.   As a result, Mr. Harris was held in jail for almost 5 months on a $5,000,000 bond and facing a mandatory minimum sentence of up to 3 years in prison.

8.   Because Mr. Harris was innocent, all charges against him were dismissed.

9.   Plaintiff brings this action for compensatory damages and punitive damages pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution and under North Carolina law.

## PARTIES

10.  Plaintiff Lee Marvin Harris, Sr. is a resident of Moore County, North Carolina.

11.  Defendant Town of Southern Pines (the "Town") is a municipal corporation organized by charter under Chapter 160A of the North Carolina General Statutes. It maintains and operates the Southern Pines Police Department ("SPPD"). Employees of SPPD are employees and agents of the Town, which bears legal responsibility under state law for negligent acts and omissions of SPPD in the course of their employment. The Town is responsible for the appointment, training, supervision, promotion and discipline of police officers and supervisory police officers, including the individually named defendants herein.

12.  Further, on information and belief, the Town of Southern Pines, at the time of the wrongful arrest, had waived governmental or sovereign immunity from the state law tort claims in this case pursuant to G.S. § 160A-485, either by participation in a government risk pool or through purchase of commercial insurance that will indemnify the Town and its agents for any judgment against it or its agents named in this action.

13. All Individual Defendant SPPD Officers, listed below, are entitled to indemnification by the Town of Southern Pines under North Carolina law for any liability arising from conduct described herein.

14. Officer Jason Perry is a police officer employed by the SPPD, being sued in his individual capacity.

15. Officer Sean Lowery is a police officer employed by the SPPD, being sued in his individual capacity.

16. Officer Kyle Marsh is a police officer employed by the SPPD, being sued in his individual capacity.

17. Chief of Police Robert Temme is a police officer who was employed by the SPPD at the time of this incident, being sued in his individual capacity and his official capacity.

## JURISDICTION

18. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(a)(3) and (a)(4) because Plaintiffs' claims arise under law of the United States and seek redress of the deprivation under color of state law of rights guaranteed by the United States Constitution.

19. Plaintiffs further invoke this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over any and all North Carolina state law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy that gives rise to the federally based claims and causes of action.

## VENUE

20.  Venue is proper for the United States District Court for the Middle District of North Carolina, pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), and 28 U.S.C. § 1402(b), where

Defendants reside and maintain their relevant places of business, and where the actions complained of herein occurred.

## JURY DEMAND

21.   Plaintiffs respectfully demand a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## FACTS

### Lee Harris, Sr. is a Minister and Community Leader in Moore County

22.   Lee Harris, Sr., ("Mr. Harris") is a 62-year-old veteran of the United States Armed Services, having served eight years in the Army.

23.   Mr. Harris also worked for the State of North Carolina as a Corrections officer for almost ten years.

24.   Mr. Harris now serves as a Minister at From Birth to Eternity Church where he has worked since 2008.

25.   Mr. Harris had never been arrested prior to this case.

26.   Through his role as a Minister and community leader, Mr. Harris often assisted individuals who had been arrested with navigating their criminal cases.

### Detective Jason Perry Threatens Lee Harris, Sr.

27.   In 2013, SPPD officers, including Officer Jason Perry were executing a search warrant at the home of a friend of Mr. Harris.

28.   Mr. Harris stood in the friend's yard to witness the search.

29.   Officer Perry did not appreciate Mr. Harris being present and monitoring the search.

30.   Officer Perry ran off the front porch and confronted and threatened Mr. Harris.

31.   After this incident, Mr. Harris filed a complaint with SPPD Internal Affairs.

4

32. In his complaint he explained that Officer Perry had threatened him. Mr. Harris also stated that Officer Perry was known in the community for using unreliable confidential informants and planting drugs on innocent citizens.

33. SPPD Chief Bob Temme took no disciplinary action against Officer Perry for this incident.

34. This incident was just one of many interactions Mr. Harris has had with Officer Perry.

35. Since this incident and Internal Affairs complaint, Detective Perry has been consistently combative towards Mr. Harris.

**SPPD Investigates Lee Harris, Jr. for Drug Trafficking**

36. In February of 2017, SPPD began an investigation into narcotics activity occurring in Southern Pines.

37. The SPPD named this investigation "Operation Leader."

38. Detective Perry led the investigation along with Detective Sean Lowery.

39. During the year-long investigation, SPPD compiled hundreds of hours of video surveillance footage and completed numerous undercover buys against targets of their investigation.

40. The investigation centered on drug gang operating at 811 W. New York Avenue and 1090 W. Indiana Avenue in Southern Pines.

41. Mr. Harris's son, Lee Harris, Jr. ("Harris, Jr.) was a suspected leader of the gang.

42. Harris, Jr., was observed multiple times at these locations involved in suspected drug transactions.

43. Harris, Jr. also allegedly sold drugs to a confidential source on multiple occasions.

44. Harris, Jr. was observed on multiple occasions driving and allegedly conducting transactions with other suspected drug dealers, including a Hispanic male who admitted to selling Harris, Jr. cocaine.

45. Harris, Jr. was also observed on multiple occasions at a U-Stor-it warehouse registered under his girlfriend's name, where he was believed to be storing narcotics.

46. At the time, Harris, Jr. was living in Charlotte with his girlfriend.

47. Harris, Jr. occasionally traveled to Aberdeen to visit his parents.

48. Harris, Jr. stayed with his parents approximately once or twice a month at their home at 803 N. Sycamore St. in Aberdeen.

49. Mr. Harris, the Plaintiff, was never observed at 811 W. New York Avenue, 1090 W. Indiana Avenue, the U-Stor-it warehouse, or any other alleged drug location.

50. Mr. Harris was never observed selling or purchasing drugs.

51. Mr. Harris was never observed in a vehicle involved in any drug transaction or with any other alleged drug dealers.

52. Mr. Harris was never observed with the Hispanic male.

53. SPPD had no evidence that Mr. Harris ever purchased or sold narcotics, because he was not a drug dealer or user.

**An SPPD Confidential Informant Approaches Mr. Harris**

54. On February 8, 2018, in an effort to entrap Mr. Harris, SPPD officers, on information and belief, employed a confidential informant ("CI") to attempt to involve him in criminal activity.

55. The CI, who was an individual known to Mr. Harris, requested that they meet at restaurant in Aberdeen to discuss a Juneteenth celebration.

56.  Mr. Harris agreed and met the CI at approximately 9 a.m. that morning.

57.  The CI told Mr. Harris that he was concerned someone was listening in on their
     conversation.

58.  He then handed Mr. Harris a handwritten note that said "just say something to the affect of
     shooting up the police dept. @ 11:00 today and lets see what or if any reaction."

59.  Mr. Harris refused to read the note out loud.

60.  After a short conversation with the CI, Mr. Harris left the restaurant.

61.  On approximately February 17, 2018, the CI appeared at Mr. Harris's home at night and
     uninvited.

62.  The CI asked if Mr. Harris still had the note he had given him.

63.  Mr. Harris told him that he threw the note away.

**SPPD Executes a Search Warrant on Mr. Harris's Home**

64.  Three days later, Officer Perry applied for a search warrant for Mr. Harris's home.

65.  The warrant was based entirely on the alleged criminal activity of Mr. Harris's son, Harris,
     Jr.

66.  The warrant mentioned no alleged criminal acts or behavior by Mr. Harris.

67.  On February 20, 2018, SPPD Officers including Officer Perry, Officer Kyle Marsh and
     Chief Temme executed the search warrant at Mr. Harris's home.

68.  At the time the SPPD Officers arrived, Mr. Harris had just finished tilling his garden and
     was getting ready to shower.

69.  Approximately 10 SPPD officers arrived at his home and demanded he allow them to enter.

70.  With guns drawn they entered his home, handcuffed him, and began to search his house and
     property.

7

71. Officers Perry and Marsh immediately went to search a 1994 Cadillac parked near the corner of Mr. Harris's yard.

72. The Cadillac had a car cover, did not have a battery, and had four flat tires.

73. It had not been operable for years and had not had an active registration since 2015.

74. The front driver's side door did not have a functioning lock, so the Cadillac could not be kept secure.

75. Officers Perry and Marsh searched the Cadillac and claimed to find a large amount of cocaine in the backseat.

76. This cocaine found in the Cadillac was packaged the same way as the cocaine found at the Hispanic male's house—who had confessed to selling cocaine to Harris, Jr.

77. Officer Marsh confronted Mr. Harris and told him that if he did not tell the officers what he knew about Harris, Jr. selling drugs, then he would be charged with the drugs found in the Cadillac.

78. Officer Marsh asked Mr. Harris if he had the key to the Cadillac.

79. Mr. Harris informed Marsh that the Cadillac had not run since 2014, did not have an active registration and had no battery.

80. Still, Officers Marsh and Perry wanted to find the key to open the trunk of the Cadillac.

81. Mr. Harris told them he did not know where the key was.

82. The Officers searched his house for the key and did not locate it.

83. Because they could not find the key, the SPPD officers used a saw to open the trunk of the Cadillac.

84. The SPPD Officers located no contraband or large amount of money in Mr. Harris's home.

85. The officers transported Mr. Harris to the SPPD station.

**SPPD Officers Execute a Search Warrant on 1090 W. Indiana Avenue**

86. While Mr. Harris's home was being raided, SPPD officers were also executing a search warrant on a drug house at 1090 W. Indiana Avenue in Southern Pines.

87. Officer Lowery received a search warrant for 1090 W. Indiana based on his observations of drug activity and sales to a confidential informant at that address.

88. During that search SPPD recovered large amounts of narcotics and cash and arrested Harris Jr., along with numerous other individuals, who were all alleged gang members and all in their thirties.

89. The SPPD also arrested the Hispanic male who had been observed earlier that day meeting with Harris, Jr.

90. The Hispanic male cooperated with SPPD and gave a statement that he had been dealing cocaine to Harris, Jr. for 5 or 6 months and had recently sold him cocaine.

**Detectives Perry, Lowery and Marsh Fabricate Evidence Against Mr. Harris**

91. SPPD Officers Lowery, Perry and Marsh knew that they did not have any evidence to tie Mr. Harris to narcotics activity, so they fabricated evidence to build their case against him.

92. The officers falsely claimed that Mr. Harris had been seen during the course of their investigation at two different locations where narcotics had been sold.

93. The officers falsely claimed they had seen Mr. Harris, during the course of their investigation, driving the inoperable Cadillac in which the drugs were found.

94. The officers falsely claimed that they found the key to the Cadillac inside Mr. Harris's bedroom.

95. The officers falsely claimed that the Cadillac had an active DMV registration to Mr. Harris.

96. The Cadillac had not been registered since 2015.

97. The Detectives falsely claimed that they had evidence that drug activity was occurring at Mr. Harris's house.

98. The Detectives repeated these false allegations and fabricated evidence to Moore County District Attorney Warren McSweeney.

99. DA McSweeney relied on this fabricated evidence to charge Mr. Harris on February 20, 2018, with trafficking cocaine.

100. Mr. Harris's bond was set by Magistrate Carol Wright at $5,000,000.

**All Charges Against Mr. Harris are Dismissed**

101. Because the SPPD was unable to produce any evidence against Mr. Harris, his bond was reduced to $25,000 on July 10, 2018, and he was released to home detention.

102. At this point he had spent almost 5 months incarcerated.

103. After the SPPD Officers admitted they had no evidence linking Mr. Harris to narcotics trafficking, all charges against him were dismissed on December 18, 2018.

INJURIES AND DAMAGES

104. This action seeks damages on behalf of Plaintiff for the loss of liberty, extraordinary emotional pain and suffering, and injuries to their person, that Plaintiff was forced to endure as a consequence of Defendants' decidedly wrongful actions.

105. As a result of Plaintiff's wrongful arrest and unjust imprisonment, despite his actual innocence of any crime, Plaintiff was incarcerated for 5 months and served another approximately 5 months on home detention.

106. Plaintiff has suffered, and continues to suffer, severe and ongoing damages, specifically including lost professional opportunities, physical pain and injuries, inadequate medical

10

care, serious psychological and emotional damage, loss of familial relationships, and loss of quality of life.

107. The acts and omissions of Defendants entitle Plaintiff to compensatory and punitive damages.

## FIRST CLAIM:

**Malicious Prosecution or Prosecution Without Probable Cause under the Fourth Amendment and 42 U.S.C § 1983**
**Against Officers Perry, Lowery and Marsh**

108. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

109. At all times relevant to this action, Plaintiff had the right under the Fourth Amendment to not be prosecuted without probable cause. *See Durham v. Horner*, 690 F.3d 183 (4th Cir. 2012).[1]

110. SPPD Officers Perry, Lowery and Marsh despite knowing that probable cause did not exist to arrest and prosecute Plaintiff, intentionally, recklessly, and with malice caused Mr. Harris to be arrested, held on bail, and prosecuted.

111. Defendants knew that Mr. Harris was a minister, army veteran, and former corrections officer.

112. Defendants knew that Mr. Harris had never been arrested for any criminal offense ever.

113. Defendants knew that Mr. Harris was not a drug dealer or user.

---

[1] *Durham v. Horner,* 690 F.3d 183, 188 (4th Cir. 2012) ("More specifically, 'we have required that [1] the defendant have 'seized plaintiff pursuant to legal process that was not supported by probable cause and [2] that the criminal proceedings have terminated in plaintiff's favor.' " *Burrell v. Virginia,* 395 F.3d 508, 514 (4th Cir.2005) (quoting *Brooks v. City of Winston–Salem,* 85 F.3d 178, 183–84 (4th Cir.1996)) (alterations and emphasis omitted)).

114. Defendants targeted Mr. Harris because he was an outspoken advocate for members of the community who had been arrested by SPPD Officers.

115. Defendants also targeted Mr. Harris because they wanted to arrest and get a conviction against his son, Harris, Jr.

116. SPPD Officers, including Detective Perry, had previously arrested Harris, Jr., for narcotics in 2013, but he had been acquitted at trial.

117. In February of 2017, SPPD started Operation Leader with Harris, Jr. as the primary target of their investigation.

118. During the year-long investigation SPPD compiled hundreds of hours of video surveillance footage and completed numerous undercover buys against targets of their investigation.

119. Harris, Jr., was repeatedly observed engaged in suspected drug activity.

120. Harris, Jr. was observed meeting with a Hispanic male engaged in suspected drug transactions.

121. Mr. Harris, although his house was surveilled, was never observed engaging in any drug related activity.

122. SPPD Officers raided Mr. Harris's home in February of 2018 because they knew that Harris, Jr., occasionally stayed with his parents.

123. Officers Perry and Marsh allegedly discovered cocaine in a Cadillac on Mr. Harris's property.

124. The front driver's side door of the Cadillac was unlocked, and the Officers knew that Harris, Jr., who was the target of their investigation, had access to the car.

125. The packaging of the cocaine matched the packaging and cocaine found at the Hispanic male's house.

126. The SPPD Officers knew that Harris, Jr.—not Mr. Harris—had recently engaged in a drug transaction with the Hispanic male.

127. Officer Marsh told Mr. Harris that if he did not inform on his son, they would charge him with trafficking narcotics.

128. SPPD Officers Perry, Lowery and Marsh knew that Mr. Harris did not sell narcotics and that his son did, but still arrested Mr. Harris in an effort to have him inform on his son.

129. SPPD Officers Perry, Lowery and Marsh then fabricated evidence and passed this falsified evidence to the DA.

130. The officers falsely claimed that Mr. Harris had been seen on multiple occasions at different locations where narcotics had been sold.

131. The officers falsely claimed they had seen Mr. Harris, during the course of their investigation, driving the inoperable Cadillac in which the drugs were found.

132. The officers falsely claimed that they found the key to the Cadillac inside Mr. Harris's bedroom.

133. The officers falsely claimed that the Cadillac had an active DMV registration to Mr. Harris.

134. The Cadillac had not been registered since 2015.

135. The officers falsely claimed that they had evidence that drug activity was occurring at Mr. Harris's house.

136. The DA relied on this false information to charge Mr. Harris with trafficking cocaine.

137. The officers failed to inform the DA that throughout the course of their year-long investigation they had never observed Mr. Harris involved in any drug activity.

138. The officers intentionally provided false or misleading information and made material omissions in their statements to the DA and the Court.[2]

139. As a result of the officers acts, Mr. Harris was arrested, charged and prosecuted without probable cause.

140. Mr. Harris is innocent.

141. All of the charges against Mr. Harris were dismissed.

142. As a direct and proximate result of the Defendants acts, Plaintiff was wrongfully arrested and imprisoned, causing him to suffer the injuries and damages described above.

## SECOND CLAIM

### Fabrication of Evidence under 42 U.S.C § 1983
### Against Officers Perry, Lowery and Marsh

143. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

144. Plaintiff has a fundamental right to be free from fabrication of evidence pursuant to the Fourth, Fifth, Sixth and Fourteenth Amendments of the United States Constitution and under 42 U.S.C. § 1983.[3]

---

[2] *Hupp v. Cook*, 931 F.3d 307, 324 (4th Cir. 2019) ("An officer who lies to secure a probable-cause determination can hardly be called reasonable. Likewise, where an officer provides misleading information to the prosecuting attorney or where probable cause is "plainly lacking," *McKinney v. Richland Cty. Sheriff's Dep't*, 431 F.3d 415, 419 (4th Cir. 2005), the procedural steps taken by an officer no longer afford a shield against a Fourth Amendment claim. This is because "[l]egal process has gone forward, but it has done nothing to satisfy the Fourth Amendment's probable-cause requirement." *Manuel*, 137 S. Ct. at 918–19.).

[3] *Willis v. Blevins*, 966 F. Supp. 2d 646, 657 (E.D. Va. 2013) ("The Fourth Circuit has recognized that the fabrication of evidence by an officer "acting in an investigating capacity" constitutes a violation the Fourth Amendment. *Washington v. Wilmore,* 407 F.3d 274, 282 (4th Cir.2005).."); *see also Gilliam v. Sealey*, 932 F.3d 216, 241 (4th Cir. 2019), *cert. denied,* 140 S. Ct. 2641, 206 L. Ed. 2d 713 (2020) ("[A]n individual has a constitutional right not to be deprived of liberty as a result of the intentional, bad-faith withholding of evidence by an investigating officer. *See Jean v. Collins*, 221 F.3d 656, 663 (4th Cir. 2000) (holding that it was clearly

145. SPPD Officers knew that Mr. Harris was not a drug dealer or user and that they had no evidence of his involvement in any drug activity.

146. SPPD Officers knew that Mr. Harris's son, Harris Jr. was likely dealing drugs and had recently purchased cocaine that was packaged identically to the cocaine found in the Cadillac.

147. SPPD Officers knew that without additional evidence of Mr. Harris's drug involvement they could not charge Mr. Harris, because he was innocent.

148. SPPD Officers fabricated evidence that Mr. Harris was observed at drug houses, was involved in trafficking, had recently driven the inoperable Cadillac, had the key to the Cadillac, and that the Cadillac had an active registration to Mr. Harris.

149. Despite knowing that each of these claims were false and that the trafficking allegations were fabricated, SPPD Officers forwarded the false allegations and false charges to the DA.

150. The individual Defendants fabrication of evidence violated Plaintiffs rights and caused him to be wrongfully arrested, charged, and incarcerated.

### THIRD CLAIM

**Failure to Intervene under 42 U.S.C § 1983**
**Against Officers Perry, Lowery and Marsh**

151. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

---

established in 1982 that when police intentionally withhold or destroy evidence, or otherwise act in bad faith, their actions violate the due process rights of a criminal defendant).").

152. Defendants that were present for and observed the aforementioned unlawful conduct, had a duty to intervene and prevent such conduct and failed to intervene.

153. Accordingly, the defendants who failed to intervene violated the Fourth, Fifth, Sixth and Fourteenth Amendments.[4]

154. Officers Lowery, Marsh and Perry were all directly involved in Operation Leader and knew that Mr. Harris did not traffic narcotics.

155. These Officers also knew that the claims of Mr. Harris's involvement in drug activity were fabricated.

156. Officers Lowery, Marsh and Perry knew that the trafficking charges were fabricated.

157. Defendants failed to intervene in the false arrest and continued prosecution of Plaintiff although they knew that these charges were fabricated and that these arrests occurred without probable cause.

158. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## FOURTH CLAIM:

### Malicious Prosecution under North Carolina State Law
### Against Officers Perry, Lowery and Marsh

159. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

---

[4] *See Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998) ("[i]f a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation . . . takes place in his presence, the officer is directly liable under Section 1983."); *see also Velardo v. Lewko,* No. 3:18-CV-1885, 2019 WL 5095657, at *8 (M.D. Pa. Aug. 22, 2019) ("(1) the officer had a duty to intervene; (2) the officer had the opportunity to intervene; and (3) the officer failed to intervene.").

160. By their conduct, as described herein, and acting under color of state law, Defendants are liable to Plaintiff under North Carolina law for the violation of their constitutional right to be free from malicious prosecution.[5]

161. SPPD Officers Lowery, Marsh and Perry, despite knowing that probable cause did not exist to arrest and continue to prosecute Plaintiff, intentionally, recklessly, and with malice caused Plaintiff to be arrested, held on bail, and prosecuted.

162. SPPD Officers Perry, Lowery and Marsh knew that Mr. Harris did not sell narcotics and that his son, Harris, Jr. did and had recently purchased cocaine, but still arrested Mr. Harris in an effort to have him inform on his son.

163. SPPD Officers Perry, Lowery and Marsh then fabricated evidence and passed this falsified evidence to the District Attorney ("DA").

---

[5] *See Braswell v. Medina*, 255 N.C. App. 217, 228–29, 805 S.E.2d 498, 507 (2017) ("As shown above, Braswell's complaint alleged facts showing that (1) the Officers initiated or participated in the criminal proceeding against him; (2) they lacked probable cause to believe he committed the offense []; (3) they acted with malice; and (4) the prosecution was terminated in Braswell's favor. " 'Malice' in a malicious prosecution claim may be shown by offering evidence that defendant was motivated by personal spite and a desire for revenge or that defendant acted with reckless and wanton disregard for plaintiffs' rights." *Lopp v. Anderson*, ⸻ N.C. App. ⸻, ⸻, 795 S.E.2d 770, 780 (2016) (citation and quotation marks omitted). Moreover, "[m]alice can be inferred from the want of probable cause alone." *Id.* at ⸻, 795 S.E.2d at 779 (citation and quotation marks omitted).

Here, Braswell has adequately alleged malice by pleading facts showing that the Officers not only lacked probable cause to believe he was guilty of the crime for which he was ultimately charged but also concealed and fabricated evidence in order to cause him to be prosecuted for that offense. Accordingly, Braswell has properly stated claims for malicious prosecution against the Rocky Mount Defendants under North Carolina law, and the trial court erred in dismissing these claims. *See Chidnese v. Chidnese*, 210 N.C. App. 299, 310, 708 S.E.2d 725, 734 (2011) ("Treating these allegations as true, these facts can be construed to state that [the defendant] procured a criminal prosecution against plaintiff with malice and without probable cause, and that the prosecution terminated favorably for the plaintiff, satisfying all of the elements of malicious prosecution." (citation omitted)).

164. Defendants intentionally provided false or misleading information and made material omissions in their statements to the DA and the Court.

165. As a result of Defendants' acts Plaintiff was arrested, charged and prosecuted without probable cause.

166. All of the charges against Plaintiff were dismissed.

167. As a direct and proximate result of the Defendants' acts, Plaintiff was wrongfully arrested and imprisoned, causing him to suffer the injuries and damages described above.

**FIFTH CLAIM**

**First Amendment Retaliation Under 42 U.S.C § 1983**
**Against Officer Perry**

168. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

169. Mr. Harris, as a leader in Moore County, often assisted citizens with criminal matters or when dealing with investigations by the SPPD.

170. This led many SPPD Officers, including Officer Perry, to dislike Mr. Harris.

171. In 2013, Mr. Harris filed a complaint with SPPD Internal Affairs.

172. In his complaint he explained that Detective Perry had threatened him when he was attempting to assist a friend whose home was being investigated by the SPPD. Mr. Harris also stated in his complaint that Detective Perry was known in the community for using unreliable confidential informants and planting drugs on innocent citizens.

173. This incident was just one of many interactions Mr. Harris had with Detective Perry.

174. Since this incident, Mr. Harris has been a target of Officer Perry and the SPPD.

175. In 2018, on information and belief, SPPD Officers including Perry, sent a confidential informant to attempt to involve Mr. Harris in criminal conduct.

176. In February of 2018, SPPD Officers led by Officer Perry, executed a search warrant on Mr. Harris's home and falsely charged him with trafficking cocaine.

177. Officer Perry knew that Mr. Harris was not involved in trafficking, and that his son Harris, Jr., was involved.

178. Officer Perry, as retaliation for Mr. Harris's prior protected speech, fabricated evidence against Mr. Harris which led to the initiation of the false charges against him.

179. Since his wrongful arrest and incarceration, Mr. Harris out of fear of further reprisal has stopped assisting citizens in Moore County with criminal matters.

## SIXTH CLAIM

**Failure to Train and or Supervise and Monell Liability Under 42 U.S.C § 1983 Against Chief of Police Robert Temme and the Town of Southern Pines**

180. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

181. Chief Robert Temme failed to properly supervise SPPD officers, despite having actual knowledge of the need for better and additional training and supervision.

182. In 2013, Mr. Harris filed a complaint with SPPD Internal Affairs.

183. In his complaint he explained that Detective Perry had threatened him and also stated that Detective Perry was known in the community for using unreliable confidential informants, planting drugs on innocent citizens, and fabricating drug charges.

184. SPPD Chief Temme took no disciplinary action against Detective Perry for this incident.

185. SPPD Chief Temme was aware of numerous other complaints and at least one lawsuit against Officer Perry claiming that he had fabricated evidence, attempted to force individuals to become confidential informants and provide false information, and that he had brought fabricated narcotics charges.

186. SPPD Chief Temme was also aware that Officer Perry had previously arrested the innocent parents of another suspect in an effort to pressure the suspect to plea or the parents to become informants.

187. Because of Chief Temme's inaction Plaintiff was wrongfully prosecuted and held in jail.

188. The repeated and sustained failures of Defendant to supervise officers of the SPPD constituted deliberate indifference to and reckless disregard for the rights of Plaintiff and the public.

189. The failure to train and properly supervise officers accused or guilty of misconduct is a pattern and practice of the SPPD.

190. Chief Temme, as the final policy maker for the SPPD, authorized this failure to train and supervise on behalf of the City.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court enter judgment for Plaintiff and order relief as follows:

A. Compensatory damages against all defendants, jointly and severally

B. Punitive damages against the individual officer defendants, jointly and severally;

C. Pre-judgment and post-judgment interest and recovery of costs, as well as reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988, and other applicable laws;

D. That the Court grant any other and further relief it deems equitable and just.

Respectfully submitted, this the 16th day of December 2021.

Abraham Rubert-Schewel (N.C. Bar # 56863)
TIN FULTON WALKER & OWEN, PLLC
119 E. Main Street
Durham, NC 27701
Tel: (919) 451-9216
Email: schewel@tinfulton.com