LEE MARVIN HARRIS, SR.,

                Plaintiff,

    v.

TOWN OF SOUTHERN PINES, Officer JASON
PERRY, Officer SEAN LOWERY, and Officer KYLE
MARSH, sued in their individual capacities, and Chief
of Police ROBERT TEMME, sued in his official and
individual capacity,

                Defendants.

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

TIN FULTON WALKER & OWEN, PLLC
119 E. Main Street
Durham, NC 27701
Telephone: (919) 451-9216

1

Plaintiff respectfully submits this Response to Defendants' Motion for Summary Judgment. Defendants' Motion should be denied in its entirety.[1]

## I.    INTRODUCTION

Plaintiff, Lee Harris Sr. ("Mr. Harris Sr.") was wrongfully arrested and prosecuted by individual Southern Pines Police Department ("SPPD") Officers. Because of Defendants' actions Plaintiff spent approximately six months in pre-trial detention and then another 8 days in federal detention; he was then let out on bond but placed on home detention for another roughly 4 months before all his charges were dismissed.

Defendants now move for summary judgment primarily based on the argument that they had probable cause for Plaintiff's arrest. Defendants assert that the cocaine found on Plaintiff's property in a car registered to him, as well as the fact that officers observed Plaintiff "engaging in a hand-to-hand transaction" with a known drug dealer, was sufficient evidence "for any reasonable officer to believe that Plaintiff was the owner of the drugs in his own vehicle." D.E. 27 at 8 (Def's Memorandum). If this was the complete factual history of this case, it would be enough for probable cause. However, these allegations are rife with fabrications and ignore exculpatory evidence known to the Defendant officers at the time of Mr. Harris Sr.'s arrest.

Plaintiff's son, Lee Harris Jr. ("Mr. Harris Jr.") was the target of a SPPD investigation that began in 2017 and was led by Officers Jason Perry and Sean Lowery. The officers conducted surveillance on Mr. Harris, Jr., via a GPS tracker as well as video and in person surveillance. On January 25 and 31 of 2018, SPPD Officer Sean Lowery observed Mr. Harris, Jr. as he traveled to his parents' home and surreptitiously placed items under a cover of a vehicle

---

[1] Plaintiff hereby voluntarily dismisses his Fifth Claim for relief, First Amendment Retaliation.

which sat in Mr. Harris Sr.'s back yard. The vehicle was a 1994 Cadillac that had no battery, had not operated in years, and had an expired registration to Mr. Harris Sr. from 2015.

On February 20, 2018, at 11:25 a.m. a GPS tracker recorded Mr. Harris Jr. traveling from a storage locker in Aberdeen where cocaine was later recovered to his father's home. Perry Depo., Ex. 3, pg. 136:14-137:18; Ex. 46, GPS Tracker Notes. Mr. Harris Jr. was then observed meeting with a hispanic male who was arrested that day for trafficking cocaine and confessed to being Mr. Harris Jr.'s supplier. Ex. 11, Federal Bond Hearing, pg. 8:2-14.

Later that afternoon, SPPD officers executed a search warrant at the home of Mr. Harris Sr. They went directly to the red Cadillac to conduct a search. During the search, Officer Perry took Mr. Harris Sr. to his squad car and questioned him specifically about the red Cadillac and if he had keys to the car. Mr. Harris Sr. informed him that he likely did but that the car had not driven in years. Officers searched the red Cadillac, found cocaine, and charged Mr. Harris Sr. with possession of the narcotics and other paraphernalia located in the vehicle. The cocaine located in the red Cadillac was packaged the same way as the cocaine located at the hispanic male's home. Ex. 11, Federal Bond Hearing, pg. 10:6-24.

Mr. Harris Sr.'s state charges were eventually dismissed when the United States Attorney's Office for the Middle District of North Carolina adopted the state case. In December of 2018, however, Lee Harris Sr.'s federal charged were also dismissed. In a Rule 11 memorandum submitted prior to Mr. Harris Jr.'s plea, Assistant U.S. Attorney Randall Galyon wrote:

> On or about January 25 and January 31, 2018, officers surveilled the residence at 803 Sycamore Street, Aberdeen, NC. Harris, Jr's parents live at the Sycamore Street residence, and Harris, Jr. often stayed at the residence during 2017 and 2018.

On both surveillance occasions, *Harris, Jr. arrived at the residence and then went over to a Cadillac covered with a gray car cover for a few minutes, consistent with placing and item in or retrieving an item from the vehicle.* Powder cocaine and crack cocaine were later recovered from that covered Cadillac on February 20, 2018, pursuant to a search warrant.

Ex. 22, Rule 11 Memorandum (emphasis added).

In short, Officers Lowery, Perry and Marsh knew that Mr. Harris Jr. was trafficking narcotics, that he was observed placing or taking items from the red Cadillac, and that the drugs found in the red Cadillac were packaged identically as drugs found at the home of Mr. Harris Jr.'s supplier. Both officers testified at their depositions that that they did not inform the state Magistrate, District Attorney Warren McSweeney, or the AUSA who decided to adopt the case that the officers had observed Mr. Harris Jr. appear to place or take items from the red Cadillac.

Finally, the allegation that Officer Perry observed Lee Harris Sr. conduct a "hand-to-hand" transaction with a known drug dealer exhibits a reckless disregard for the truth on its face. As laid out below, Mr. Harris Sr. was at his mother-in law's home and was getting his car washed by an individual who had a car cleaning service. Officer Perry knew this individual had a car cleaning business and the car wash is partially documented on SPPD surveillance video. When this Court adds in the material omissions and subtracts the fabrications it becomes clear that the officers lacked probable cause to prosecute Lee Harris Sr.

## II. STATEMENT OF FACTS

### A. Lee Harris Sr. is a Community Leader in Moore County

Lee Marvin Harris Sr. is a 63-year old disabled veteran of the United States Armed Services. Harris Depo., Ex. 2, pg. 11:8-13. Mr. Harris Sr. is a minister and has served for many years as an elder at New Jeruslem Missionary Baptist Church. *Id.* at 12-15. He worked for the North Carolina Department of Corrections as a corrections officer from 1993 to 2000. *Id.* at

4

10:11-25. On multiple occasions, Mr. Harris Sr. assisted in the investigations of citizen complaints involving law enforcement or helped individuals navigate the criminal justice system. *Id*. at 34:22-24; 35:18. At the sentencing hearing for Mr. Harris Jr., this Court remarked, "I have great respect for Mr. Harris' father [Sr.]. He's obviously a fine person." Transcript of Harris Jr. Sentencing, Ex. 28, pg. 23: 1-3.

**B.    Mr. Harris Sr.'s History of Complaints Against SPPD**

Mr. Harris Sr.'s interactions with Officer Jason Perry and the rest of the SPPD date back to as early as 2008. Harris Depo., Ex. 2, pg. 37 line 8. Mr. Harris Sr. "lost count" of the amount of times he advocated on behalf of Moore County citizens, but recalled that he made at least 3 formal complaints against Officer Jason Perry. *Id*. at 37:16-17. One one occasion, while investigating a drug offense, Officer Perry ran towards Mr. Harris Sr. and "stopped right directly in [his] face and yelled, '[y]ou leave right now, go!'" Ex. 37, Assault Complaint.

**C.    SPPD Begins its Investigation into Drug Trafficking in Southern Pines**

In early 2017, the SPPD, led by Officers Perry and Lowery, began an investigation into drug trafficking in Southern Pines titled "Operation Leader". Perry Depo., Ex. 3, pg. 99:18. Officer Marsh was the investigations supervisor of Operation Leader. Marsh Depo., Ex. 4, pg. 97:17-18. Officers Lowery and Perry were sworn as federal agents for the purpose of leading this investigation. Marsh Depo., Ex. 4, pg. 40:4-5; 44:11.

As early as February 2017, SPPD "conducted surveillance on multiple residences through primarily Southern Pines, West New York Avenue, West Indiana Avenue." May 01, 2018 State Bond Hearing, Ex. 27, pg. 23:16-18. "We did wood surveillance for a period of time. Wood surveillance led to pole camera surveillance. That led to tracker surveillance." *See* Federal Bond Hearing Transcript, Ex. 11, pg. 17:11-13. In addition to conducting wood

surveillance, Officers Lowery and Perry used GPS trackers on several vehicles driven by Mr. Harris Jr. Lowery Depo., pg. 33:4-22.

### 1. SPPD Targets Lee Harris, Jr. and His Associates

In December 2017, Officer Perry utilized a confidential source of information (CSI) to obtain information that "Lee Marvin Harris Jr. is the leader of the DBC and supplies the entire DBC group with narcotics to sell." Warrant Application, Ex. 9, pg. 8:7. The DBC members "involved Lee Harris Jr., Christian Terry, Lamar Sealy, and some other ones that were not arrested on that day." Lowery Depo., Ex. 5, pg. 27: 6-10. Officer Lowery testified that at no point was Mr. Harris Sr. a "target" of the drug-trafficking operation, and was never identified as a member of the "Dope Boy Clic" or "DBC" *Id.* at 42:18-21.

### 2. SPPD Observes Lee Harris Sr. Paying to Have his Car Washed Outside of His Mother in Laws Home

One of the locations surveilled by Officers Lowery, Perry and Marsh was an abandoned house located at 811 W. New York. Lowery Depo., Ex. 5, pg. 29: 1-7. In addition to in person surveillance, the officers utilized a "pole camera" placed in the woods outside of 811 W. New York. *Id.* at 29-30. In 2018, Martha Dickerson, Lee Harris Sr.'s mother-in law, lived at 823 W. New York, directly next door to 811 W. New York. Perry Depo., Ex. 3, pg. 36-37. Officer Perry and Officer Lowery both testified at their depositions that they were aware that Mr. Harris Sr.'s "mother-in law lived next-door" to 811 W. New York. *Id.*; Lowery Depo., Ex. 5, pg. 48:24-25. The below photo is of 823 W. New York, the grey house on the left, and 811 W. New York, the white house on the right. Ex. 32.



In his declaration in support of Defendants motion for summary judgment, Officer Perry states that he observed Lee Harris Sr. handing cash to a "local drug dealer" in front of 811 W. New York Ave. D.E. 26-1 ¶ 4. Officer Perry claims that he observed this transaction on surveillance video. *Id.* At his deposition, however, Officer Perry stated he wasn't sure if he was also present in the woods for this surveillance or not. Perry Depo. Ex. 3, pg. 124:3-5. More importantly, Officer Perry testified that the individual Mr. Harris Sr. handed money to, Robert McRae, owned a car wash business in 2018. *Id.* at 123:5-11. Officer Perry also testified that in 2018 he knew of Mr. McRae and knew he owned a car wash business. *Id.*

The SPPD pole cam took multiple surveillance videos on this date. The first two videos show Mr. Harris arriving at his mother-in law's home in his silver truck and standing in her yard as he appears to wait for someone. *See* Exs. 15, 29, Videos 0000-0001. Robert McRae's Black SUV then arrives at the intersection with cleaning materials in a trailer attached to his vehicle. *See* Ex. 17, Video 00002. Below is a screen shot of Video 00002.



Approximately 40 seconds into Video 00002, Mr. Harris moves his silver truck in front of 811 W. New York and Mr. McRae then positions his SUV so it is directly in front of the truck. *Id.* Video 0018 shows Mr. Harris Sr. speaking with Mr. McRae, handing him two bills of United States currency, and then walking out of the screen. Ex. 16. Mr. Harris Sr.'s silver truck then reappears in the frame with cleaned tires and a shined exterior. *Id.* at 1:45. Mr. Harris Sr. then parks his truck in front of his mother-in law's home. *Id.*

### 3. Officer Lowery Observes Mr. Harris Jr. Placing an Object in a Red Cadillac Parked at Mr. Harris Sr.'s Home

Near the end of their investigation, Officers Lowery and Perry both conducted wood surveillance at the home of Lee Harris Sr, at 803 N. Sycamore Street. Perry Depo. Ex. 3, pg. 113:19; Lowery Depo. Ex. 5, pg. 87:22-25; 88:1-2. On January 24, 2018, Officer Lowery conducted wood surveillance and observed Mr. Harris Jr. arrive at 803 N. Sycamore St. Ex. 30, Jan. 24, 25 Surveillance Notes. In his notes, Officer Lowery wrote that "Lee Jr [] goes to the rear of the home, out of sight and there for approximately 2 to 3 minutes." *Id.* It is undisputed

that the Cadillac was parked "in the rear of the yard." Marsh Depo. Ex. 4, pg. 187:12-13.

Photos taken by SPPD show that the only vehicle in the rear of the yard was the red Cadillac.

*See* Ex. 20, 21, SPPD Photos 014, 026.





The next day, Officer Lowery again surveills the house, and notes that "Lee Jr then goes to the front right edge of the property and is placing or retreiving something from underneath a tarped item located to the right of the enclosed trailer." Ex. 30 ¶ 5. Less than a week later, on January 31, 2018, Officer Lowery again conducted wood surveillance at 803 N.

Sycamore Street. Ex. 31 ¶ 1. In this note, Lowery states: "Lee Jr, wearing a black jacket with a hood that was pulled over his head, gets out of his car and goes to the right side of the home, near a silver in color enclosed trailer. He then approaches a vehicle covered with a blue tarp on it. He is over at this vehicle approximately 2 to 3 minutes. Lee Jr then goes inside the home using the front door, for 1-2 minutes, comes back out of the house and gets back in the Venza." *Id*.

When questioned at his deposition about the red Cadillac, Officer Lowery stated that the car was located "to the right of the property." Lowery Depo. Ex. 5, pg. 54:24-25. Officer Lowery testified that on one occasion, he observed Mr. Harris Jr. approach a vehicle near the trailer on the right side of Mr. Harris's house. *Id.* at 37:1-6. "I couldn't see exactly what was going on over there, but he did approach that vehicle." *Id.* At his deposition, Officer Perry testified that he reviewed and spoke with Officer Lowery about the contents of his surveillance notes. Perry Depo., Ex. 3, pg. 116:2-11.

In addition to Officer Lowery's in person surveillance, Officer Perry compiled handwritten notes from the GPS trackers that were placed on Harris Jr.'s vehicles. Perry Depo. Ex. 3, pg. 133:20-25;134: 1-16. On February 20, 2018, at 11:25 a.m. Perry's GPS tracker recorded Mr. Harris Jr. traveling from a storage locker in Aberdeen where cocaine was later recovered to his father's home. *Id.* at 136:14-137:18; Ex. 46, GPS Tracker Notes.

**D.    SPPD Procures a Warrant for Mr. Harris Sr.'s Home**

Approximately three weeks after the surveillance of Mr. Harris Jr. placing or taking items from the red Cadillac, Officer Perry applied for a search warrant of Mr. Harris Sr.'s home. Perry Depo., Ex. 3, pg. 125:17-20.

In the warrant applicaton, Officer Perry stated that when present in "Moore County" Lee Harris Jr. "resides at 803 N Sycamore St., Aberdeen NC 28315 (Residence of Lee Marvin Harris Sr.)" *See* Ex. 9, Warrant Application, Attachment #3, line 15. Through Perry's surveillance of this address, he confirmed that this is Jr.'s "most frequented area during the daytime and nightime while in the Moore County area." *Id*. Lee Harris Sr. was never mentioned in the warrant application as a suspected drug-trafficker or to have ever been surveilled while involved in any drug transaction. *Id*.

**E.**    **SPPD Officers Execute a Warrant at Lee Harris Sr.'s Home and Immediately Question him About the Cadillac**

On February 20, 2018, SPPD officers were granted a search warrant for Mr. Harris Sr.'s residence at 803 N. Sycamore Street. Perry Depo. Ex. 3, pg. 125:17-25. Prior to the execution of the warrant, Officer Perry met with Officers Lowery, Marsh and officers on the special response team. *Id.* at 126:1-22. The officers decided that Officer Perry would go to Lee Harris Sr.'s home while Lowery would lead the warrant execution at 1090 W. Indiana, a location where officers had observed narcotics sales. *Id.*

Upon making entry to Mr. Harris Sr.'s home, Officer Perry handcuffed him and placed him in his squad car for an interview. *Id.* at 129:1-6. Officer Perry was not present for the search of the red Cadillac and does not recall when the cocaine was located, but stated that at the time of the interview, Mr. Harris Sr. was not under arrest. *Id.* Officer Marsh testified that the interview of Mr. Harris Sr. occurred "[a]t some point I believe before the drugs were found." *Id.* at 115:15-18.

Officer Perry questioned Mr. Harris Sr. repeatedly as to whether his son, Mr. Harris Jr., had ever brought drugs to his house. Id. at 131:5-14. Officer Perry stated to Mr. Harris Sr. that

"[t]hings have happened that have come directly from this house." Id. at 147:11-15. At his deposition, Officer Perry testified that he believed that Mr. Harris Jr. was bringing drugs to Mr. Harris Sr.'s house. Id. at 148:8-12.

Officer Perry then began to question Mr. Harris Sr. about the Cadillac and if he had the keys to the vehicle. Id. at 149:19-24. Officer Perry did not ask Mr. Harris if he had the keys to his truck which was parked in the drive way, or to the storage shed in his yard. Id. at 150:15-25-151:1-4. Office Perry later asked whether "there [is] any place around your house that your son goes on a regular basis that is kind of strange?"

As Officer Perry questioned Mr. Harris Sr. in his squad car, Officer Marsh discovered cocaine in the rear armrest of the red Cadillac. Marsh Depo., Ex. 4, pg. 164-12:15; *see* also Perry Depo., Ex. 3, pg. 173: 22-25, 174: 3-4. Mr. Harris Sr. was placed under arrest for possession of the cocaine and transferred to the SPPD. Lowery Depo., Ex. 5, pg. 52. Officers Marsh and Perry debriefed officer Lowery and told him that cocaine was recovered in a "red cadillac" located "to the right of the property." *Id.* at 52:12-25. Officer Lowery, with input and oversight from Officers Marsh and Perry, drafted the Magistrate's order charging Lee Harris Sr. with possession and trafficking cocaine. *Id.* at 63:2-20; Ex. 16, Magistrate's Order. Officer Lowery then transferred Mr. Harris Sr. to the Moore County Jail. *Id.*

## F. SPPD Omits Material Exculpatory Evidence When Seeking Charges Against Mr. Harris Sr.

At the Moore County Jail, Officer Lowery swore out the allegations in the Magistrate's Order to Magistrate Carol Wright. Lowery Depo., Ex. 5, pg. 79:4-13. Officer Lowery, when speaking to Magistrate Wright, did not inform her that he had just three weeks prior observed Lee Harris Jr. placing or taking items from the red Cadillac. *Id.* at 80:25-81:12.

> So as I understand what you're asking me, you're asking me that -- did I tell the magistrate at that point that it was the same vehicle that I observed several weeks prior, that you're saying that I stated into a note or made notes about where Junior was going? No, I -- I would not tell the magistrate that.

*Id.* Officer Lowery also failed to inform her that GPS tracking showed that the morning of the search Lee Harris Jr. had traveled from the cocaine storage locker to his father's residence. Perry Depo. Ex. 3, pg. 136: 22-25, 137: 1-13. And Lowery failed to inform Magistrate Wright that the Cadillac was inoperable, had no battery and no active registration. *Id.* at 118: 7. Magistrate Wright found probable cause to charge Mr. Harris Sr. and set his bond at $5,000,000. Ex. 33 Bond Order.

Similarly, the officers also did not inform the District Attorney Warren McSweeney that they had observed Mr. Harris Jr. three weeks earlier placing or taking items from the Cadillac. McSweeney Depo., Ex. 44, pg. 59:3-8. And they again omitted this fact when they testified in the state grand jury. Perry Depo. Ex. 3, pg. 103:20-104:1-9.

**G.     The U.S. Attorney for the Middle District Adopts the Prosecution of Mr. Harris Sr.**

On August 2, 2018, all of Mr. Harris Sr.'s state charges were dismissed because he was indicted federally. *See* Ex. F, State Dismissal. Officers Perry and Lowery spoke with Assistant U.S. Attorney Joanna McFadden prior to her adopting the case federally. Perry Depo. Ex. 3, pg. 101:5-25. Officer Perry "eventually" provided the U.S. Attorney's office with the prosecution summary, but was unsure if this occurred before or after Mr. Harris Sr. was indicted. *Id.* Officer Perry was scheduled to testify in the federal grand jury, but could not recall if he gave testimony. *Id.* at 103:6-10; Ex. 34, Emails to AUSA. Officer Lowery did testify in the federal grand jury. Lowery Depo., Ex. 5, pg. 77:18-21.

13

Officer Perry testified that he did not inform Joanna McFadden that SPPD officers had observed Mr. Harris Jr. appear to place or take items from the red Cadillac in the weeks prior to the warrant execution. Perry Depo., Ex. 3, pg. 98:4-6.

1.    **The U.S. Attorney for the Middle District Affirms that Defendants Observed Mr. Harris Jr. Placing or Taking Items from the Cadillac**

AUSA Randall Galyon took over the prosecution after Joanna McFadden went on maternity leave. *Id.* at 101:8-16. Mr. Galyon spoke with Officer Perry and reviewed the evidence against Lee Harris Sr., and on December 14, 2020, dismissed all charges against him. *Id*: Ex. E, Federal Dismissal.

On December 18th, 2020, Mr. Galyon filed a Rule 11 Memorandum in the case against Lee Harris Jr. Ex. 22. The memorandum discusses the SPPD officers' surveillance in detail and confirms that they observed Harris Jr. appear to place or take an item from the Cadillac:

> On or about January 25 and January 31, 2018, officers surveilled the residence at 803 Sycamore Street, Aberdeen, NC. Harris Jr.'s parents live at the Sycamore Street residence, and Harris Jr. often stayed at the residence during 2017 and 2018.

> On both surveillance occasions, Harris Jr. arrived at the residence and then went over to a Cadillac covered with a gray car cover for a few minutes, consistent with placing and [sic] item in or retrieving an item from the vehicle. Powder cocaine and crack cocaine were later recovered from that covered Cadillac on February 20, 2018, pursuant to a search warrant.

*Id.*

At his deposition, after reviewing this memorandum, Officer Perry stated that the "only way they [the U.S. Attorneys] would receive this information" would have been from him or Officer Lowery. Perry Depo. Ex. 3, pg. 109:2-18.

14

**H.      Plaintiff's *Monell* Allegations against the Town of Southern Pines**

At the time of Mr. Harris Sr.'s arrest he was told by multiple officers that this investigation was not about him but was about his son. *See* Harris Depo., Ex. 2, pg. 148:3-10 ("Marsh told me to tell you that if you didn't cooperate with him . . .  about your son he was gonna take you to jail and lock you up."); *see also* Perry Depo. Ex. 3, pg. 130:12-14.

Plaintiffs' arrest and prosecution is just one of many where Officer Perry has attempted to coerce individuals to falsely testify against others through wrongful arrests or the threat of arrest. This includes the case of Martha Dickerson, who was arrested in 2013 by Officer Perry, because her son was alleged to be involved in narcotics trafficking. Martha Dickerson Affidavit, Ex. 23 ¶ 4. Despite Mrs. Dickerson having no involvement with any drug activity and never possessing any drugs she was charged with possession of narcotics. *Id*. at ¶ 5-8. All charges against Mrs. Dickerson were later dismissed. *Id*. Martha Dickerson stated in her affidavit that Jason Perry told her, "[w]e are working on you to get to your son." Ex. 23 ¶ 5.

On a second occasion, Officer Perry attempted to coerce Tracy Williams to become an informant under the threat of arrest. "On August 12, 2013, I was contacted on my personal cell phone by Officer Jason Perry of the Southern Pines Police Department." Affidavit of Tracy Williams, Ex. 40, ¶ 2. Officer Perry told Ms. Williams that she needed to provide information to help herself because of her current "criminal record" and asked her, "do you know Stretch and Lil Dee and have you ever bought drugs from them?" *Id*. at ¶ 3. He asked her to buy drugs from suspected drug dealers in the area, to wear a wire and camera, and that if she did not she would "spend a lot of time in prison." *Id*. at ¶ 6. Ms. Williams' affidavit shows the text message exchange between her personal cell number and Jason Perry's SPPD cell phone

number. *Id*. at ¶ 9. In one message, Perry states, "[d]on't tell nobody I called you erase every message." *Id*.

On a third occasion, Officer Perry approached Arthur Darby to become a confident information ("CI"), and to specifically provide information on Mr. Harris Jr. and any known drug activity in the area. Affidavit of Arthur Darby, Ex. 13, ¶ 1. Officer Perry confronted Darby on more than two occassions, offering him $50.00 to provide information. *Id*. at ¶ 4. Even after Darby repeatedly told Officer Perry that he did not have any information to provide, Perry made "numerous attempts to coerce [Darby] into falsifying evidence to help build his cases." *Id*. at ¶ 5. On March 05, 2013, Arthur Darby filed a *pro se* civil action against Officer Jason Perry and the Southern Pines Police Department for conduct that Darby described as being accused of a crime, illegally interrogated, mentally coerced, and his civil rights violated. *See* Arthur Darby 2013 lawsuit, Ex. 12, pg. 3, ¶¶ 1-4.

## III. ARGUMENT

### A. STANDARD OF REVIEW

Summary judgment is allowed only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Wilson v. Prince George's County, Maryland*, 893 F.3d 213, 218 (4th Cir. 2018). A reviewing court's function is not to decide the truth of the matter but "to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 255 (1986). Therefore, to determine whether genuine disputes of material fact exist, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

**B.     DISPUTES OF MATERIAL FACT EXIST AS TO ALL OF PLAINTIFF'S FEDERAL CLAIMS**

**1.     Defendants lacked Probable Cause to Prosecute Plaintiff**

Defendants lacked probable cause to charge Mr. Harris Sr. with any crime. The officers knew that Mr. Harris Jr. had been observed going to the red Cadillac and appeared to place or take items from it—just weeks before the warrant execution. The exact location where narcotics and other contraband were recovered. The officers tracked Mr. Harris Jr. in the weeks leading up to the search and knew that he repeatedly traveled from his storage locker where he kept narcotics to his father's house where he was seen near the red Cadillac. On the date of the search warrant execution, a GPS tracker recorded Mr. Harris Jr. traveling from a storage locker in Aberdeen where cocaine was later recovered to his father's home. Perry Depo., Ex. 3, pg. 136:14-137:18; Ex. 46, GPS Tracker Notes. Moreover, the narcotics found in the red Cadillac were marked and packaged identically as drugs recovered from the supplier of Mr. Harris Jr. The Officer Defendants obscured these facts from the District Attorney and Magistrate, but once they were discovered by AUSA Galyon, he dismissed the case against Lee Harris Sr.

To state a claim for prosecution without probable cause in violation of the Fourth Amendment, the Fourth Circuit requires "that [1] the defendant have seized plaintiff pursuant to legal process that was not supported by probable cause and [2] that the criminal proceedings have terminated in plaintiff's favor." *Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012) (citation omitted). Here the only contested element is probable cause.

The remaining arguments put forth by Defendants in support of probable cause are that (1) Plaintiff was the registered owner of the Cadillac; (2) the keys to Cadillac were found on Plaintiff's bedroom door; and (3) that Plaintiff was spotted outside a known drug house and

filmed engaging in a "hand-to-hand" transaction with a known drug dealer. Each of these claims involve material omissions, disputed questions of material fact, or outright fabrications by the Defendant officers.

First, the Cadillac was not operational, had no battery, and the registration to Mr. Harris Sr. had expired in 2015. The Defendants knew this. *See* Marsh Depo., Ex. 4, 139:23-25 ("I believe the registration was expired); *Id.* at 171:8-11 ("there was no battery in the car"); Ex. 35, SPPD Photo of Expired Tags and Registration. The event report created by SPPD showed the Cadillac's plate status as "expired." Ex. 36. SPPD Event Report, pg. 3.

Second, Defendants claims about the Cadillac keys are rife with inaccuracies or fabrications that when clarified prove the keys were accessible to anyone in the household. Officer Marsh in his initial report stated that "Mr. Harris walked with me into his home, into the northern most bedroom, to a hanger on the wall, and provided me a key that was hanging from this location." Ex. 43, Marsh Supplemental Report, pg. 1. Mr. Harris Sr., testified at his deposition that he did not "hand [Marsh] any keys" but showed him "where my key rack was." Harris Depo., Ex. 2, pg. 134:8-19. Officer Marsh claimed that "[t]hese keys did in fact turn the ignition on, and operated the locks on the doors . . ." *Id.* On September 22, 2022, the parties tested the keys on the Cadillac. *See* Ex. 39, Video Keys Test. None of the keys fit or turned the door locks. *Id.* One of the keys was able to fit into the ignition and turn. *Id.*

Most Importantly, this key rack was located on the outside of Mr. Harris Sr.'s bedroom door—not in the bedroom—and was accessible to any of the members of the household including Mr. Harris Jr., when he stayed there. Harris Depo., Ex. 2, pg. 134:13-135:5; *see* below Ex. 41, SPPD Photo 39, Key Rack on Door.



Third, as explained above, the video footage allegedly showing a "hand to hand" transaction with a known drug dealer, is actually footage of Mr. Harris Sr. paying Robert McRae for a car wash. *See* supra IV.C.2. In 2018, at the time he observed this footage, Officer Perry admitted that he knew that Robert McRae owned a car wash business and also knew that Mr. Harris Sr.'s mother-in law lived at 823 W. New York, the house directly next door to where his car was cleaned. The SPPD surveillance videos prove that the alleged "hand to hand" transaction was nothing more than payment for a car wash.

Simply put, the officers knew (1) that Lee Harris Sr. paid Robert McRae for a car wash; (2) that the alleged Cadillac car keys were actually located outside the bedroom where anyone in the household could access them; (3) that the Cadillac was inoperable and that the registration expired years ago; and (4) that Lee Harris Jr. had placed or received items from the Cadillac on numerous occasions just weeks prior and that the cocaine found in the Cadillac matched the packaging and marking of cocaine recovered from the supplier of Mr. Harris Jr.

These material facts were not provided to the Magistrate at the time of the probable cause determination, to the DA prior to indictment, to the state or federal grand jury, or to any federal authority at the time of arrest or indictment. *Durham v. Horner*, 690 F.3d 183, 188–90 (4th Cir. 2012) ("Our precedents instruct that a grand jury's decision to indict ... will [not] shield a police officer who deliberately supplied misleading information that influenced the decision.") (internal citation omitted). Under these facts, the officers are not entitled to qualified immunity. *See also Miller v. Prince George's Cnty., Md.,* 475 F.3d 621, 632 (4th Cir. 2007) (denying qualified immunity to an officer who made "intentionally or recklessly false material statements or omissions in order to obtain a warrant.").

The officers now claim that they provided all details they knew to the DA and AUSA in their "prosecution summary." The officers' signatures on the prosecution summary, however, are dated March 19, 2018, nearly a month after Harris Sr.'s state arrest and two weeks after he was indicted. *See* Ex. 45, Prosecution Summary. No one from the prosecutor's office signed the summary indicating that they had received the documents. *Id.* Moreover, Officer Perry testified at his deposition that he was unsure when he provided the relevant documents to AUSA Joanna McFadden, only that she got them "eventually". 101:5-25. In any event, Officer Perry testified that he never informed the U.S. Attorney's Office that SPPD officers had observed Mr. Harris Jr. appear to place items in the Cadillac weeks prior to the warrant execution. Perry Depo. Ex. 3, pg. 98:4-6. The officers also failed to inform DA McSweeney of Mr. Harris Jr.'s actions leading up to the search warrant execution. *See* supra section IV.F.

Because the Defendant officers lacked probable cause to charge Plaintiff with any crime his claim for prosecution without probable cause must survive summary judgment.

## C. Defendants Fabricated Evidence Which Caused Plaintiff's Deprivation of Liberty

Defendants are incorrect that a Fourth Amendment fabrication of evidence claim requires a conviction. The Supreme Court recently recognized in *Manuel v. City of Joliet, Ill.*, 580 U.S. 357 (2017) a "Fourth Amendment claim" where the Plaintiff sought relief for "his (post-legal-process) pretrial detention" based on fabricated evidence. In *Manuel* the Plaintiff was arrested based "solely on his possession of pills that had field tested negative for an illegal substance" *Id.* A judge found probable cause and ordered the Plaintiff detained pending trial. *Id.* However, because the judge relied on the officers' "fabrications", the Plaintiff was able to able to bring a claim challenging his "wrongful detention." *Id.* "Legal process did not expunge [Plaintiff's] Fourth Amendment claim because the process he received failed to establish what that Amendment makes essential for pretrial detention—probable cause to believe he committed a crime."

Here, Mr. Harris Jr. makes the same claim. Officer Defendants Perry, Lowery and Marsh, fabricated evidence which caused Plaintiffs' wrongful *pre-trial detention* in violation of the Fourth Amendment. *Massey v. Ojaniit*, 759 F.3d 343, 357 (4th Cir. 2014) (False statements or omissions violate the Fourth Amendment if they are "material" and "made deliberately or with a reckless disregard for the truth.").

Defendants' fabrications through false statements and material omissions are recited in detail in section V.B.1. In summary, these fabrications include, (1) that the officers omitted evidence that Lee Harris Jr. had placed or received items from the Cadillac on numerous occasions and that the cocaine found in the Cadillac matched the packaging and marking of

21

cocaine recovered from the supplier of Harris Jr.; (2) the officers omitted that Lee Harris Sr. paid Robert McRae for a car wash; (3) the officers fabricated evidence that the Cadillac car keys were located inside the bedroom when they were actually located outside the bedroom where anyone in the household could access them; and (4) the officers fabricated information that the Cadillac was operable and that the registration was active.

As explained above, this information was fabricated or withheld from the state and federal decision makers which caused Plaintiffs' wrongful detention.

**D.    Plaintiff has Established a Failure to Intervene Claim**

Defendants are correct that Plaintiff's failure to intervene claim is derivative of his underlying constitutional claims. Because, viewed in the light most favorable to Plaintiff, he has established that Defendants violated his Fourth Amendment rights, the bystander officers, Perry, Lowery and Marsh can be held liable for failure to intervene. *Randall v. Prince George's Cnty., Md.*, 302 F.3d 188, 204 (4th Cir. 2002).

**E.    Plaintiff Has Established A Pattern and Practice of Illegal Arrests by Officer Perry and Condoned by the SPPD**

The Town of Southern Pines is liable under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) for a custom, pattern and practice of arresting or threatening innocent individuals in an attempt to coerce them into falsely testifying against others. In addition to Mr. Harris Sr.'s case, Plaintiff has provided affidavits from three other individuals who allege that Officer Perry arrested them or attempted to coerce them into providing fabricated or false information against other individuals. *See* section II.H. This pattern of misconduct by Officer Perry should have alerted Chief Temme and other municipal officials of the likelihood continued Fourth Amendment violations.

## IV. DISPUTES OF MATERIAL FACT EXIST ON ALL STATE LAW CLAIMS

### A. Defendants Lacked Probable Cause to Prosecute Plaintiff and Did so with Malice

As described in detail in section III.B.1. the Officer Defendants prosecuted Mr. Harris Sr. without probable cause. Defendants only remaining argument on the state law malicious prosecution claim is that this claim is barred by public official immunity. This argument lacks merit. Public official immunity cannot be raised as a defense to intentional torts. "[I]f a party alleges an intentional tort claim, the doctrine of qualified immunity does not immunize public officials or public employees from suit in their individual capacities." *Hawkins v. State*, 453 S.E.2d 233, 242 (N.C. App. 1995). Here, because malicious prosecution is an intentional tort brought against the Defendants Perry, Marsh and Lowery, in their individual capacities, public official immunity does not apply.

Defendants' argument that their efforts were not malicious is equally unavailing. Here, Defendants malice is met not only from their lack of probable cause, but also from their withholding of exculpatory evidence from state and federal officials and their multitude of fabrications cited above.

## V. CONCLUSION

Plaintiff respectfully request this Court deny Defendants' Motion for Summary Judgment and to set this matter for a jury trial.

23

Respectfully submitted, this the 28th day of November, 2022.

/s/ Abraham Rubert-Schewel
Abraham Rubert-Schewel
NC State Bar No.
Tin, Fulton, Walker & Owen, PLLC
119 E. Main Street
Durham, NC 27701
schewel@tinfulton.com
*Counsel for Plaintiff*

/s/ Nichad Davis
Nichad Davis
NC State Bar No. 56297
Tin, Fulton, Walker & Owen, PLLC
119 E. Main Street
Durham, NC 27701
ndavis@tinfulton.com
*Counsel for Plaintiff*

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this Brief consists of 6,247 words including all signature blocks and headings.

This, the 28th day of November, 2022.

**/s/ Abraham Rubert-Schewel**
Abraham Rubert-Schewel
NC State Bar No.
Tin, Fulton, Walker & Owen, PLLC
119 E. Main Street
Durham, NC 27701
schewel@tinfulton.com
Counsel for Plaintiff