1    NORTH CAROLINA GENERAL COURT OF JUSTICE

2                SUPERIOR COURT DIVISION

3         *******************************

4    STATE OF NORTH CAROLINA        )
                                    )    COUNTY OF MOORE
5        vs.                        )
                                    )    18 CRS 50521-24,26
6    LEE MARVIN HARRIS, JR.,        )
              Defendant.            )
7    _____)

8

9    STATE OF NORTH CAROLINA        )
                                    )    COUNTY OF MOORE
10       vs.                        )
                                    )    28 CRS 50515-16
11   CHRISTIAN TERRY,               )
              Defendant.            )
12   _____)

13

14   STATE OF NORTH CAROLINA        )
                                    )    COUNTY OF MOORE
15       vs.                        )
                                    )    18 CRS 50513-14
16   LEE MARVIN HARRIS, SR.,        )
              Defendant.            )
17   _____)

18        *******************************

19      TRANSCRIPT OF BOND MODIFICATION HEARINGS

20               Pages 1 through 36

21                 May 1 , 2018

22        *******************************

23      Honorable JAMES M. WEBB, Judge Presiding

24

25

1    APPEARANCES:

2          WARREN MCSWEENEY
             Assistant District Attorney
3          P. O. Box 429
             Carthage, NC  28327
4          Warren.McSweeney@nccourts.org
             On behalf of the State

5

6          KEVIN C. FOUSHEE, Attorney at Law
             POST, FOUSHEE AND PATTON
7          205 Courtland Drive
             P. O. Box 1320
8          Sanford, North Carolina  27330
             919-775-5616
9          On behalf of the Defendant Harris, Jr.

10         RICHARD COSTANZA
             Attorney at Law
11         375-F SE Broad St.
             Southern Pines, NC  28387
12         910-692-7121
             On behalf of the Defendant Terry

13         PETER BROWNBACK, Attorney at Law
             235 E Pennsylvania Ave
14         Southern Pines, NC  28387
             910-695-7030
15         On behalf of the Defendant Harris, Sr.

16

17

18

19

20

21

22

23

24

25

Reported by:  Cynthia L. Hall, RPR
Official Court Reporter
Cynthia.L.Hall@nccourts.org

1    P R O C E E D I N G S

2         (These proceedings commenced at 11:01 a.m. on

3         May 1, 2018.  The defendants Harris, Jr. and

4         Terry were present with their respective

5         counsel.)

10:59:05    6         MR. MCSWEENEY:  Your Honor please, next two matters

7    come from, beginning on page 48, outside 128 through 132, Lee

8    Marvin Harris Jr.  He is present with his attorney

9    Mr. Foushee.  And also, Your Honor, on page 133, outside 375

10   and 376, Christian Terry, he is also present, as is his

11   attorney, Mr. Costanza.

11:02:06   12         If Your Honor please, this is on pursuant to

13   motions filed on behalf of both defendants to have their

14   pretrial conditions of release addressed.

11:02:21   15         Your Honor, Mr. Harris, Jr., his current bond

16   is $9 million secured, and Mr. Terry's bond is $5 million as

17   set by the magistrates in both of those cases.

11:02:50   18         MR. FOUSHEE:  I guess it's my turn.  Good morning,

19   Your Honor.

11:02:52   20         THE COURT:  Good morning, Mr. Foushee.

11:02:52   21         MR. FOUSHEE:  Your Honor, I have the pleasure of

22   representing Mr. Harris, and you see what he's charged with.

23   He's charged with a couple mid-level heroin traffickings, and

24   I think he has a high-level cocaine trafficking, and he has

25   the highest bond of any individual who I've ever represented

1  in my nearly 15 years doing this, and it was set at

2  $9 million by the magistrate.

11:03:16  3  He does have some prior criminal history.  I

4  think he has a handful of Class I felonies that he has been

5  convicted of.  They are all convictions that stem from local

6  counties.  I think he has one from Hoke, one from Moore

7  County.  I think his most recent conviction may have been in

8  2016.

11:03:42  9  He is a life-long resident here in Lee County.

10  His mother is a teacher.  He has a father, although his

11  father is a charged codefendant in this case, but he has been

12  around this part of the world his entire life.

11:03:55  13  I can't tell you very much about the facts of

14  the case because I have not yet received discovery, so I'm

15  not in a great position to tell you whether I think this is a

16  really strong case or not very strong case.

11:04:07  17  Everything I know about the facts as the State

18  contends them to be are from a search warrant that Your Honor

19  signed off on, and it would tend to suggest that this was an

20  ongoing investigation originating perhaps as far back of

21  February 2017, that involved some surveillance from the

22  woods, some following of vehicles where a number of

23  encounters between my client were observed that could

24  potentially be innocuous, could potentially be something

25  else, depending on the opinion of who it was observing them.

11:04:45  1    There was an allegation that on one occasion my

2    client was involved dropping a package off outside of a house

3    and law enforcement contends that contained a trafficking

4    amount of heroin.  I haven't seen labs on that, and I haven't

5    seen discovery to tell you whether there was video of that,

6    photos of that, or anything else to corroborate the officer's

7    statement about what did or did not transpire.

11:05:11  8    All of that ultimately resulted in the issuance

9    of a search warrant that led to the search of a residence in

10   Southern Pines where law enforcement contends they seized

11   various and sundry contraband and a firearm that my client

12   was charged with possessing.

11:05:30  13   That is a house that -- that they allege my

14   client stayed at occasionally overnight.  They also contend

15   that he spends a number of nights overnight at a girlfriend's

16   house in Charlotte, and it's true he does have a girlfriend

17   that lives down the road in Charlotte.

11:05:48  18   The mat -- the bond was set by magistrate, I

19   believe her name is Carol Wright, if I'm not mistaken.  As I

20   understand it she is a former Southern Pines police officer

21   herself, and this of course was an investigation that was

22   carried out by the Southern Pines Police Department, so that

23   at least caused me to raise an eyebrow about the true

24   neutrality in the attachment of the magistrate setting that

25   bond, perhaps explains in part why it's so extraordinarily

1  high.

2  There were written findings made about the bond

3  that says that, you know, my client on occasion travels to

4  Florida and South Carolina, which I would say isn't terribly

5  remarkable for any person who lives in this part of the world

6  to, on occasion to travel to those neighboring states, one of

7  which is a popular vacation destination, and says he has

8  arrests in neighboring counties.

9  There is some suggestion this case may be

10  adopted federally.  I have no earthly idea whether that will

11  happen or not.  It has not happened yet.  And that this case

12  is old, and it concludes with that my client is opined to be

13  a danger to society, although I will point out that, you

14  know, at least as far back as February of 2017 law

15  enforcement was observing behavior that they at least opined

16  was criminal activity and chose not to take any action to

17  intervene for the better part of a year, which would at least

18  be some suggestion that they didn't think Mr. Harris was

19  going anywhere, that he must not be too imminently dangerous

20  to anyone, since nothing happened until they got this warrant

21  a year later.

22  So while I understand he has some prior

23  criminal history, you know, I am not -- plenty aware of

24  problems, you know, controlled substances cause in our

25  society, and the many, many people they affect, a bond of

1   $9 million in a drug case does seem beyond the pale, and I

2   would respectfully suggest a bond of $250,000 secured will be

3   adequate to secure his attendance at trial.

11:08:12   4   Thank you very much.

11:08:15   5   THE COURT: Mr. Costanza?

11:08:17   6   MR. CONSTANZA: Judge, it's somewhat difficult for

7   me to -- to effectively argue a bond reduction motion in this

8   case in that I don't have discovery. The State, I assume,

9   has assembled at this point, so I'm not able to give Your

10  Honor a really good forecast of the strength or weaknesses of

11  the State's case against Mr. Terry, who is charged with

12  trafficking by possession, level two trafficking, PWISD

13  cocaine, maintaining a dwelling, and then possession of

14  cocaine within a thousand feet of a primary school.

11:08:56   15   Your Honor, his bond is $5 million. My

16  understanding of the strength or weakness of the evidence

17  against Mr. Terry at this time is that he was present when a

18  house in Southern Pines was searched by the police. I

19  believe he was getting a shower at the time the police made

20  entrance in the house, kicked the door down, whatever --

21  whatever means they used to gain entry, and was just stepping

22  out of the shower drying off at the time they ran in and

23  caused him to be prone on the floor and taken into custody.

11:09:35   24   He obviously didn't have any controlled

25  substances directly on his person at that time. House was

1    searched.  There were other people present at the house when

2    it was searched.  And there was, I believe, according to the

3    warrant, 279 grams of cocaine that was recovered, not in his

4    actual possession.

11:09:56    5    Mr. Terry does not live at that location, has

6    never lived at that location.  The search warrant that Your

7    Honor signed, I've gone through the search warrant.  It seems

8    to me that Mr. Terry is not mentioned that much, if at all,

9    in the search warrant.  I can stand to be corrected on that.

10    There is a very brief mention of the house where he was --

11    where he was located being one of the houses of interest in

12    the police department.

11:10:29    13    One thing I always think is interesting when

14    the magistrate fills out a factor sheet when they set a

15    secured bond, certain things that are supposed to be

16    mentioned on the factor sheet, one is the defendant's family

17    ties, employment, character, degree of intoxication, or

18    mental conditions, somebody wrote "unknown," with regarding,

19    you know, this gentleman if he has family ties in this area.

20    Then it goes on to says, states he lives with his mother in

21    Southern Pines.

11:11:03    22    It would be very easy to determine if this guy

23    lived in Southern Pines, if he has family that lives in

24    Southern Pines, defendant's length of residence, and other

25    ties to the community, unknown.

11:11:15  1              Well, what does it say on his driver's license?

2    Where did he go to school?  Did he go to high school here?

3    Did he go to elementary school?  Primary school?  That's very

4    easy to determine.  History of flight or failure to appear,

5    and then somebody wrote, "none."

11:11:34  6              So if he had failed to appear, again, that's

7    very easy for the police or the magistrate's office to

8    determine, they pull up his criminal record to see if there's

9    been prior offenses that have been issued.

11:11:47 10              I would contend in this case if this factor

11   sheet was filled out accurately that this man is from Moore

12   County, his family lives in Moore County, he has three

13   children ages ten, nine and eight that live here in this

14   area, he shows up in court when he's expected to appear in

15   court, a $5 million bond, Your Honor, I would contend for

16   what he is accused of is -- is beyond the pale.  It's a Class

17   F felony.

11:12:26 18              The guidelines that Your Honor, along with

19   former Chief Judge William Neely adopted for our judicial

20   district back in 2003 indicates for a Class F felony the

21   suggested range is 2500 to $15,000.

11:12:47 22              You know, I'm not going to say Mr. Terry's

23   never had to appear in court, that he was on probation at the

24   time he was arrested in this case, so I'm not -- that is

25   certainly a factor Your Honor can take into account, but I

1  would ask Your Honor to set a bond that is consistent with

2  the guidelines that you and Judge Neely adopted for our

3  district some 15 years.

11:13:12  4      If they had any question or concern if he was a

5  resident of Moore County, if he had ties to the community,

6  they could -- well, he's on probation here in Moore County,

7  they could check with his probation officer and provided that

8  information to the magistrate when his bond of $5 million was

9  assessed.

11:13:30  10      I would also say, again, it is -- he's put --

11  I'm in somewhat of an untenable position arguing the strength

12  or weakness of the evidence in this case when we haven't been

13  provided discovery.

11:13:44  14      So we would ask Your Honor to modify

15  Mr. Terry's bond accordingly.

11:13:49  16      MR. MCSWEENEY:  Your Honor please, the State would

17  ask that the bonds remain the same.  As far as dealing with

18  Mr. Harris, Jr., prior criminal history, the State would

19  contend he's a level three for felony sentencing, with

20  convictions in 2007 here in Moore County possession of drug

21  paraphernalia; 2009, a conviction of possession of cocaine

22  here in Moore County; 2009 also in Guilford County a class

23  one conviction for misdemeanor possession of marijuana; 2010

24  a felony possession of marijuana in Hoke County; and a

25  April 11th, 2016 conviction here in Moore County for

possession of cocaine, along with a resisting a public

officer in 2007 in Moore County.

11:14:36                As it relates to Mr. Terry and his prior

history, Your Honor, State would contend he would also be, or

he would be a level three for felony sentencing.  As

Mr. Costanza referenced, he was on probation for a sale of

cocaine.  He was convicted on September 6th of 2016, for two

counts of selling cocaine, one count of possession of stolen

firearm, possession with intent to sell and deliver

marijuana, and possession with intent to sell and deliver

cocaine.

11:15:08                Prior to that, Your Honor, 2008 conviction in

Moore County of misdemeanor maintaining a place for the

keeping or storing of controlled substance; 2014, March of

'14, convictions in Moore County of misdemeanors, assault on

a government official, carrying a concealed gun, resisting a

public officer and communicating threats; and also in that

same year, 2014, a conviction for injury to real property,

and again, he was -- Mr. Terry was on probation at the time

of these offenses.

11:15:43                Your Honor, Investigator Shawn Lowery and

Investigator Jason Perry are present, as well as Chief Bob

Temme of the Southern Pines Police Department.

11:15:53                As Mr. Foushee referenced going back to

February of last year I became involved with that

1    investigation that lasted, well, at least a year and then

2    some, Your Honor. There were multiple orders signed allowing

3    for surveillance to be conducted on these individuals.

11:16:11   4    I will tell the Court that there are at

5    least -- there are five codefendants in Moore County.

6    Mr. Harris, Sr., Lamar Seally, Lisa Hanani. Your Honor,

7    there are two other, I say codefendants or two other related

8    defendants, a Calvin Fox out of Lee County, and the name just

9    escaped me out of Davie County.

11:16:41   10   I will get that name at the end of my

11   presentation.

11:16:43   12   Your Honor, this stretch between Moore County,

13   Charlotte, Davie County, Sanford, as part of the

14   investigation where the officers in the Southern Pines Police

15   Department for the better part of a year had visual

16   surveillance on multiple residence where these individuals,

17   including the defendant and Mr. Terry had set up basically a

18   drug business and were selling drugs out of a particular

19   residence.

11:17:10   20   One of the residence mentioned was on New York

21   Avenue where officers witnessed Mr. Harris leave from a

22   storage building in Aberdeen, go to that residence, which, on

23   New York Avenue, which he had no lawful ownership or

24   possessory interest to, where he and the other codefendants

25   had essentially set up at a location where they had been

1   selling controlled substances.

11:17:36  2         And the officers observed the defendant place a

3   bag down on the ground.  They went and retrieved that bag and

4   it turned out to be heroin, a trafficking amount of heroin

5   that the defendant had.

11:17:46  6         All of that led up to there was multiple visual

7   surveillance on the habits and patterns of these defendants

8   as far as a pattern of leaving one particular residence,

9   going to a storage unit, driving up to Randolph County to

10  meet the other codefendant who lives in Davie County, going

11  down to Lee County, then back down to Southern Pines.

11:18:09  12        On the day in question, on February 20th, 2018,

13  again officers had visual surveillance.  They had a very good

14  understanding of where everything was.  They had a search

15  warrant ready for a residence on West Indiana Avenue in

16  Southern Pines.  They observed the -- Mr. Harris, Jr. do his

17  normal course of business, go to the storage unit, drive up

18  to Randolph County, go to Lee County in Sanford, and then

19  back down to the house on West Indiana Avenue.  He was in a

20  2009 Toyota Venza.  When he got out of that car the search

21  warrant was executed.  During a search of the, where

22  Mr. Harris, Jr., Mr. Terry was seized from a bedroom inside

23  the residence, and during a search of the -- of the Toyota

24  Venza, approximately 228 grams --

11:19:09  25        THE COURT:  Say again --

11:19:09  1          MR. MCSWEENEY:  -- 228 grams of cocaine, Your Honor,

2     that would be the level two amount which is a mandatory

3     minimum 70 to 93 months with a $100,000 fine.

11:19:22  4               Your Honor, there was approximately $4,400

5     seized from the center console of the Toyota Venza that the

6     defendant was just seen getting out of.

11:19:35  7               Your Honor, during a search of the residence at

8     West Indiana Avenue as it relates to Mr. Terry, the defendant

9     was located in a bedroom in there.  Mr. Terry's wallet and

10    driver's license were located in there.  He had approximately

11    $331.

11:19:51  12              There was a pair of shorts that were located in

13    the bedroom, and inside the shorts pocket was a plastic bag

14    which contained an additional 279 grams of cocaine.  Again,

15    Your Honor, that would be the Class F amount, 70 to 93 months

16    would be the mandatory minimum/maximum sentence at that time.

11:20:18  17              There was a laundry detergent bottle that was

18    found to contain 4,000 -- excuse me $496.34.  There was a

19    prescription bottle that had Mr. Terry's name on it that was

20    also found in that bedroom.  So the State contended that

21    Mr. Terry did actually reside there and had been staying at

22    that residence located at 1090 West Indiana for sometime.

11:20:50  23              Your Honor, almost simultaneously there was

24    also a third codefendant at that location, Mr. Lamar Seally.

25    He was also located there.  He was arrested at that location.

1         The officers with the Southern Pines Police

2   Department also almost simultaneously with the assistance of

3   other jurisdictions in Moore County executed a search warrant

4   at 803 North Sycamore Street located in Aberdeen.  That was

5   purported to be the residence where Lee Marvin Harris, Sr.

6   primarily resided.  The State would also contend that the

7   codefendant, Mr. Lee Marvin Harris, Jr., also stayed there.

8   There was a Cadillac that was in the residence that the keys

9   to that vehicle belonged to Lee Marvin Harris, Sr.  There was

10  a gray car cover over it.  During a search of the interior of

11  that car, Your Honor, behind the rear armrest was

12  approximately 88 grams of cocaine.  That would be the Class G

13  level which would be a 35 to 51 months, and there was also an

14  additional 13 grams.  The 88 grams was powder, Your Honor,

15  and approximately 13 grams of crack.  There was a handgun

16  located in the bedroom the State would contend would be

17  attributed to the codefendant, Mr. Lee Marvin Harris, Jr.

18  The defendant's driver's license was there and other

19  documents that contained his name.

20        In the closet of that bedroom, Your Honor,

21  there was a Springfield XD .40 handgun was located.

22  Mr. Harris, Sr. was present at that location.  He was read

23  his rights, waived his rights, began telling the officer

24  Mr. Harris, Sr., who you'll hear from after this case, did

25  not have a record.  There were some handguns.  Additionally

1 from the .40 caliber that was located in the codefendant

2 Mr. Harris, Jr.'s bedroom there were several other firearms

3 located inside the residence which Mr. Harris, Sr. did inform

4 law enforcement officers of that. He did not inform the

5 officers about the .40 caliber that was found in his son's

6 bedroom.

11:23:16  7        Your Honor, a third location that was also

8 searched pursuant to a search warrant issued by, I believe,

9 Your Honor, by a judicial official, was a storage building

10 located on Highway 15/501 in Aberdeen. This was the same

11 storage building that defendant, Mr. Harris, had been seen

12 frequently going to and going inside, coming outside, and the

13 officers would contend based on their surveillance that he

14 appeared to be picking up some items and dropping off some

15 items, and his clothing would change, and the appearance of

16 his clothing would change as if to indicate he put something

17 of relatively substantial size in his pockets and go to some

18 of the other locations that I talked about.

11:24:11  19        But during a search of that storage building,

20 Your Honor, there was a plastic bag of cocaine was located

21 which contained approximately two ounces of cocaine, which

22 would be yet another mandatory 35 to 51 month sentence

23 against Mr. Harris, Jr.

11:24:33  24        Your Honor, the investigation on February 20th

25 also led to a search of a residence in Charlotte where a

small amount of cash was located. That would be the

residence that has been referenced to belonging to Ms. Lisa

Hanani, who is the purported girlfriend of Mr. Harris, Jr.

11:24:55

Items were also located in Lee County at a

residence in Sanford, Mr. Calvin Fox. He is facing multiple

drug charges there.

11:25:04

Based on observation and surveillance that the

officers had as they were going to Asheboro to meet -- where

Mr. Harris, Jr. was going to meet an individual from Davie

County, officers arrested that individual and multiple kilos,

I don't have the exact amount in front of me, Your Honor, for

those multiple kilos of cocaine were located at that

residence, Your Honor. So he is facing charges there.

11:25:29

As has been referenced, other jurisdictions

outside of the state of North Carolina expressed an interest

in this matter. I have not been given the green light or

the -- informed that the feds have adopted this case. I feel

fairly certain that they will, and hopefully within the next

30 days we'll have an idea of which cases and which

defendants.

11:25:55

So at this time the State would ask that the

bond remain the same. I have not provided discovery yet.

There is at least 720 pages of documents, and I'm sure many

more than that that have been submitted to us. There is more

terabytes, or I'm not sure the exact technology word as far

1    as describe the amounts of surveillance footage that the

2    Southern Pines Police Department has in this case.  The

3    untold number of man-hours, so I have not had an opportunity

4    to go through every piece and second of it, so the discovery

5    has not been provided to.

11:26:35    6    Once I have a clearer idea of the direction of

7    where these charges are, either remaining in my jurisdiction,

8    which I would have absolutely no problem with them staying

9    here, but if the feds see fit to adopt them then we will

10    fully cooperate with them, but we would ask Your Honor to

11    keep the bond -- bond the same.

11:26:58    12    Don't wish to be heard any further, Your Honor.

11:27:00    13    THE COURT:  We're going to take our morning recess

14    of 15 minutes, after which we will, the Court will then hear

15    the bond motion on Lee Marvin Harris, Sr., and at that time

16    the Court will rule on all three of these bond motions.

11:27:15    17    Court's in recess for 15 minutes.

11:27:17    18    (Recess from 11:27 a.m. 11:59 a.m.)

11:27:17    19    (Defendant Harris, Sr. present with his

20    counsel.)

11:59:09    21    MR. MCSWEENEY:  Your Honor please, next is the

22    matter on page 50, outside 133, 134, Lee Marvin Harris, Sr.

23    He is present with his attorney, Mr. Brownback.  And again,

24    this is kind of a continuation or a supplement to the bond

25    hearing involving his codefendants.

11:59:27    1    Mr. Harris, Sr.'s bond is set at the amount of

            2    $5 million, secured.

11:59:40    3    THE COURT:  Mr. Brownback?

11:59:42    4    MR. BROWNBACK:  Thank you, Your Honor.  Your Honor,

            5    that's correct, $5 million bond.  Been incarcerated since

            6    February 20th.  Judge, he's 58 years old.  He doesn't have

            7    any prior criminal convictions at all.  At all.  He's a

            8    disabled veteran.  He served in the United States Army for

            9    about eight years.  He was also a corrections officer.  He's

           10    retired.  He lives in Aberdeen at 803 Sycamore Street, North

           11    Sycamore Street with his wife, Valerie.  Ms. Valerie, she's

           12    present raising her hand.  That's his daughter Varlusha.

           13    That's his brother Stanley.  So he's got family and ties to

           14    this community.  He's been in Moore County since 1975, Judge.

           15    Before that he was in Hoke County because he was born in Hoke

           16    County.  1975 he met Ms. Valerie and they were married in

           17    1980.

12:00:35   18    Judge, he's a pastor, ministers to people, and

           19    as I stated previously, he's got no record whatsoever.

12:00:43   20    He had ties to this community that go back

           21    decades.  Your Honor's already heard a few arguments from

           22    other counsel, and already heard about this search warrant

           23    that was executed.

12:00:56   24    Your Honor, in this search warrant, this search

           25    warrant that was obtained, he's not mentioned in it.  The

1    residence, Mr. Harris' residence at 803 North Sycamore Street

2    is mentioned about two times in that search warrant.  First,

3    paragraph 10, where it says on January the 29th surveillance

4    was being conducted at 803 North Sycamore Street in Aberdeen

5    where they were surveilling Lee Marvin Harris, Jr., a

6    codefendant and what vehicle he had.

12:01:31    7            Then, paragraph 15 of the search warrant,

8    Judge, the law enforcement says that the affiant's been able

9    to determine that Lee Marvin Harris, Jr. resides at 803 North

10   Sycamore Street, residence of Lee Marvin Harris, Sr.  The

11   applicant has been able to confirm this through -- that is --

12:01:53   12            THE COURT:  What paragraph you reading?

12:01:54   13            MR. BROWNBACK:  Fifteen, Judge.  And that they're

14   able to confirm that he resides there because he resides at

15   the location during the majority of night hours which

16   indicates a time when most people sleep.  That is the

17   indications for 803 North Sycamore Street.

12:02:11   18            Now, you heard about the surveillance being

19   conducted in Aberdeen, at the storage lockers, at the

20   residence in Southern Pines.  No where did you hear that Lee

21   Marvin Harris, Sr. was surveilled.  There's no indication

22   anywhere that he was a part of this case besides the fact, in

23   the parenthesis, residence of Lee Marvin Harris, Sr. in

24   paragraph 15.

12:02:40   25            They did not surveille him in any of the

vehicles that they tracked from hither to -- from hither to

yon.  They didn't observe him dropping any suspicious

packages.  They didn't observe him at all and found it not

necessary to include any of his actions in the search

warrant.  Nothing.  I think that's rather telling, Your

Honor.

12:03:02          And Lee Marvin Harris, Jr., that's his son, so

also in the search warrant there wasn't any indication that

there was any alleged illegal activities going on at Lee

Marvin Harris', Sr.'s, home.  There were no drug transactions

going on.  There were no drops.  There were no buys.  There

was nothing.  It didn't say that they saw Lee Marvin Harris,

Sr. walking out, finding drugs, or secreting drugs.  He's not

mentioned at all.

12:03:34          This -- the written determination of the

judicial official, Lee Marvin Harris, Sr. has involvement

based on investigation with Mexican drug cartels, well, there

wasn't any indication of any Mexico drug cartel at 803 North

Sycamore Street.  There wasn't any indication that Lee Marvin

Harris, Sr. had involvement with any of the other

codefendants.

12:04:01          Judge, Your Honor can read the determination,

but lives in Aberdeen but has drug connections in Charlotte

and others, and other remote areas based on the

investigation.  No where based on the information that we've

1    received was Lee Marvin Harris, Sr. surveilled leaving his

2    house.  Not -- not driving to Charlotte, not driving to any

3    other community.  They didn't surveille him.  They observe

4    him.  They didn't observe what he was doing because he wasn't

5    a focus of the investigation.

12:04:34    6    Length of residence, you heard this before

7    unknown.  Well, they could have asked.  Defendant's record of

8    convictions, none.  And NCAware found other charges, pending

9    arrest, but they looked, there's no other convictions.

10   History of flight, none, but defendant is aware of other

11   pending cases and believed to be a flight risk.  He's a

12   58-year-old man who's a pastor, who's retired, lived in

13   Aberdeen, was swept up in this investigation, who's just been

14   wanting to know what's been going on.

12:05:07   15    Your Honor, we're operating, all the defense

16   counsel in this case are operating with a severe derth of

17   information of he was arrested February the 20th.

18   February 20th.  Been in jail since then.  The only

19   information I have is this warrant, nothing else.  No

20   discovery, no nothing but the search warrant is what

21   everything was based on, and the search warrant doesn't

22   implicate my client whatsoever.  Whatsoever.  Besides the

23   fact that he resides there and besides the fact that he is a

24   codefendant's father.

12:05:39   25    Your Honor, we'd ask you to find that that

1   $5 million bail is extremely extensive and set it to

2   something more reasonable, and reduce it by as much as the

3   Court would consider.  Thank you.

12:05:56   4   MR. MCSWEENEY:  Your Honor please, the State would

5   ask the Court to kind of adopt everything I argued on behalf

6   Mr. --

12:06:05   7   THE COURT:  Thing about that --

12:06:06   8   MR. MCSWEENEY:  I understand.

12:06:06   9   THE COURT:  -- is this defendant did not hear what

10  you said.

12:06:09   11  MR. MCSWEENEY:  He was not in here, that's correct,

12  Your Honor.  I will just, again, Your Honor, going back to

13  February of last year, even kind of a little before that

14  February of '17 I became involved with this investigation,

15  that this, the Southern Pines Police Department started up

16  involving all these defendants.  They conducted surveillance

17  on multiple residences throughout primarily Southern Pines,

18  West New York Avenue, West Indiana Avenue.

12:06:39   19  This defendant was seen at least two different

20  residence where narcotics had been sold, was present during

21  those -- the times when others were involved.

12:06:51   22  Ultimately, Your Honor, the investigation, and

23  there was a lot of visual surveillance based on orders signed

24  by various courts tracking the multiple codefendants in this

25  case, all led up to the execution of multiple warrants on

February 20th of this year.

12:07:09

As it relates to this defendant, Your Honor, a residence at 803 North Sycamore Street in Aberdeen where the defendant lived, the State would contend in addition to where the defendant lived, where his son stayed occasionally, Lee Marvin Harris, Jr., when officers executed the search warrant at that residence, this defendant was there on February 20th. He had keys in his possession to a Cadillac that was in the vehicle that was in the yard.

12:07:39

THE COURT: Talking about this defendant?

12:07:41

MR. MCSWEENEY: This defendant, yes, sir. There was a Cadillac that was located at that residence. When they searched the inside of the -- of that vehicle, Your Honor, they found over 200 -- excuse me, between 28 and 200 grams of cocaine, I believe approximately two ounces of cocaine. I believe it was 88 grams of powder cocaine.

12:08:08

THE COURT: Who was that vehicle registered to?

12:08:10

MR. MCSWEENEY: It was registered to this defendant and the keys to that Cadillac were inside the residence. Officers had surveillance prior to February 20th that had the defendant driving that vehicle, was inside that vehicle. There was a gray cover over the vehicle, but it was, the State would contend it was in -- was in use and operation, was utilized by this defendant to traffic cocaine, just as he was charged.

12:08:33  1          When he was -- there was also some cash that

2    was located inside -- actually, Your Honor, as far as other

3    items of contraband, there was the cocaine located inside the

4    car, set of digital scales.  The defendant, when first

5    encountered by law enforcement, did advise the officers that

6    he had a handgun under his mattress, several other long guns.

7    I think two to three other guns were located in the closet

8    attributed to this defendant.

12:09:15  9          Those items were located.  They were not seized

10   by law enforcement.  As Mr. Brownback referenced, the

11   defendant has no criminal record, no convictions, so he was

12   not prohibited from possessing firearms.  There was, however,

13   located in a bedroom where the defendant's son occasionally

14   would lay his head from time to time they found a handgun in

15   there in the closet.  A .40 caliber Springfield was located

16   there.

12:09:47  17         There was a search warrant was executed in a

18   storage unit off of 15/501 in Aberdeen where, during the

19   course of the investigation, the State would contend that the

20   primarily -- the codefendant, Mr. Lee Marvin Harris, Jr.

21   would either travel from the residence on Sycamore Street, go

22   to the storage unit, back to the residence on Sycamore

23   Street, and then travel to either Asheboro or other counties.

24   The State would contend that after leaving the storage unit a

25   lot of time would go back by this residence on Sycamore

1   after.

12:10:22   2   THE COURT: The defendant's residence?

12:10:23   3   MR. MCSWEENEY: Not all the times, but again, during

4   the whole 12, 13, 14 months of this investigation, there

5   would be evidence the State contends that had this house

6   being a hub, one of many hubs in this case, where narcotics

7   were coming in and out, for everybody, everybody to know

8   about.

12:10:42   9   The defendant was at, again, at least one

10   address where multiple sales of narcotics were witnessed, due

11   to surveillance. There are charges where an individual has

12   been indicted for selling narcotics out of a house at New

13   York Avenue. Mr. Lamar Seally, who is the -- who was the

14   third codefendant that was arrested at the residence at West

15   Indiana Avenue, which is where the third search warrant was

16   executed where Mr. Lee Marvin Harris, Jr., Christian Terry

17   and Lamar Seally were all located.

12:11:20   18   Various levels of cocaine located in the

19   vehicle that Mr. Lee Marvin Harris, Jr. had been seen driving

20   from that day from the storage unit to this defendant's house

21   up to Raleigh -- excuse me, Randolph County, Sanford, and

22   then back to West Indiana Avenue, the State would contend

23   that the history and the pattern that was involved in this --

24   in this enterprise definitely had Mr. Harris, Sr. very much

25   involved in knowing about what was going on.

12:11:50  1      Trafficking amounts of cocaine were located

2      inside the defendant's, or the codefendant's vehicle at West

3      Indiana Avenue.  There was trafficking amounts of cocaine

4      located in the shorts, the State would contend, belonged to

5      Mr. Christian Terry that also contained were his driver's

6      license and prescriptions that were issued to Mr. Terry were

7      located in the room that he stayed at at West Indiana Avenue.

12:12:17  8      The -- as -- well, the third area that was

9      searched on February 20th of 2008 [sic], the storage unit on

10     15/501 in Aberdeen, approximately two ounces of cocaine were

11     located there.  Again, that was a storage building that was

12     witnessed numerous times by law enforcement, again, primarily

13     the codefendant, Mr. Lee Marvin Harris, Jr., this defendant's

14     son, would travel back and forth from the residence on

15     Sycamore Street to the -- to the storage unit, and as the

16     State argued before, would pick up a lot of controlled

17     substances and then travel to either his dad's house or up to

18     Randolph County and then ultimately to Lee County.

12:13:00  19     Again, there were five individuals charged in

20     Moore County with these offenses.  In addition to what I've

21     mentioned to a Miss Lisa Hanani, who was the reported

22     girlfriend of Lee Marvin Harris, Jr., she was arrested, she

23     lived in Charlotte, a warrant was executed at her residence.

12:13:21  24     Additionally charges were brought forth in Lee

25     County.  Mr. Calvin Fox, who the State would contend,

1    defendant, codefendant Mr. Harris, Jr. had delivered a

2    quantity of cocaine and/or heroin to his residence after

3    going to Randolph County where he met an individual who was

4    subsequently charged, and that individual's name was a

5    Mr. Gonzalo Gomez. He was the individual that in Davie

6    County when he was arrested by law enforcement based on the

7    observations and the dealings that he had with Mr. Harris,

8    Jr. They searched his residence and multiple kilos of

9    cocaine were located at his residence.

12:14:04  10        So the State would contend this is an ongoing

11   investigation as far as the discovery being provided to my

12   office and to me. As I mentioned with Mr. Harris, Jr., and

13   Mr. Terry, the federal government is considering adopting

14   this case and bringing out charges. I would anticipate

15   within the next 30, 45 days there will be some clear guidance

16   as far as a direction of who will be prosecuting this case,

17   whether it's on the state level or the federal level.

12:14:39  18        Would ask Your Honor to keep the bond in

19   effects. Again, just for purposes of the record,

20   investigators Shawn Lowery, Jason Perry are here with the

21   Southern Pines Police Department, as well as Chief Bob Temme,

22   Southern Pines Police Department. We just ask Your Honor to

23   keep all their bonds the same, would object to any

24   modification.

12:15:03  25        Thank you, Your Honor. Nothing further.

| | | |
|---|---|---|
| 12:15:07 | 1 | THE COURT: Anything further, Mr. Brownback? |
| 12:15:09 | 2 | MR. BROWNBACK: Well, Your Honor, I mean, we |
| | 3 | heard -- |
| 12:15:11 | 4 | THE COURT: First of all, let me ask you, do you |
| | 5 | desire to call any officers that are here in this case? |
| 12:15:16 | 6 | MR. BROWNBACK: I don't, Judge. |
| 12:15:17 | 7 | THE COURT: Go ahead. |
| 12:15:18 | 8 | MR. BROWNBACK: We hear that the Sycamore Street |
| | 9 | address is a hub of drug activity, but we don't -- couldn't |
| | 10 | see anything that law enforcement felt was sufficient against |
| | 11 | my client to put in a search warrant to search his residence. |
| | 12 | It wasn't a hub. It -- the limited, extremely limited |
| | 13 | information that we've received right now, it doesn't suggest |
| | 14 | nor does arguments of the district attorney suggest that |
| | 15 | Mr. Harris, Lee Marvin Harris, Sr. was involved in any way. |
| 12:15:53 | 16 | There's nothing -- law enforcement took their |
| | 17 | reasons, the best reasons that they possibly had to apply for |
| | 18 | a search warrant of this man's home. |
| 12:16:03 | 19 | And that was their best shot, probable cause, |
| | 20 | here we go. We need to search this man's home. They did. |
| 12:16:09 | 21 | It doesn't matter if he has a lawful firearm in |
| | 22 | his residence. Doesn't matter anything. What matters he was |
| | 23 | just in his residence, and since then he's been under a |
| | 24 | $5 million punitive bond, which isn't supported by what |
| | 25 | limited information that we have. |

12:16:25   1          THE COURT:  All right.  Detective Perry, if you'd

2    come around and be sworn.

12:16:29   3              (Oath administered by the clerk.)

4    **JASON PERRY**, being first duly sworn, gave answers to **THE**

5    **COURT** as follows:

12:16:55   6          THE COURT:  State for the record your name.

12:16:56   7          THE WITNESS:  Detective Jason Perry.

12:16:58   8          THE COURT:  Occupation?

12:16:59   9          THE WITNESS:  I'm a detective with the Southern

10   Pines Police Department.

12:17:03  11          THE COURT:  What evidence does the State have

12   against this defendant in the light most favorable to the

13   State?

12:17:11  14          THE WITNESS:  Repeat that, please?

12:17:13  15          THE COURT:  What evidence is there against this

16   defendant to support the indictment for the offenses of

17   trafficking in cocaine by possessing 28 grams or more but

18   less than 200 grams, maintaining a vehicle for controlled

19   substances, possession of drug paraphernalia, possession with

20   intent to sell and deliver cocaine, in the light most

21   favorable to the State.  What evidence have you all gathered

22   against this defendant?

12:17:44  23          THE WITNESS:  Basically having in his possession and

24   control is a vehicle that was registered to him, along with

25   the vehicle keys, in which the cocaine was found.

| | |
|---|---|
| 12:17:57 | 1 |

        THE COURT:  There's been some mention about a cover.

2  Was that vehicle covered with a car cover?

12:18:01  3        THE WITNESS:  Upon our arrival it was covered, yes,

4  sir.

12:18:03  5        THE COURT:  And do you have an opinion as to the

6  purpose of that cover?

12:18:07  7        THE WITNESS:  My opinion would be to keep it clean.

8  I have no idea the reason behind it, but typically a car

9  cover is put on to keep the vehicle clean.

12:18:18  10        THE COURT:  Was the vehicle registered?

12:18:20  11        THE WITNESS:  Yes.

12:18:22  12        THE COURT:  Was the vehicle operative?

12:18:23  13        THE WITNESS:  Not to my knowledge.

12:18:27  14        THE COURT:  And what's the basis of that answer?

12:18:31  15        THE WITNESS:  My understanding is the vehicle did

16  not even have a battery installed in it so it was not

17  operable.

12:18:38  18        THE COURT:  Do you know who all had access to that

19  vehicle in addition to this defendant?

12:18:45  20        THE WITNESS:  Well, the keys to the vehicle were

21  inside Mr. Senior's bedroom at the same time, so anybody that

22  had access to the keys would have access to the vehicle.

12:19:02  23        THE COURT:  When you executed the search warrant was

24  the vehicle locked or unlocked?

12:19:05  25        THE WITNESS:  The front driver door was unlocked.  I

1    believe all the other doors were locked.

12:19:13   2         THE COURT:  Even though you say the vehicle was not

3    operable, because at least didn't have a battery in it, it

4    still had a valid registration on it?

12:19:21   5         THE WITNESS:  Yes, sir.

12:19:24   6         THE COURT:  Either side have any questions?

12:19:26   7         MR. BROWNBACK:  No, Your Honor.

12:19:27   8         MR. MCSWEENEY:  No questions, Judge.

12:19:28   9         THE COURT:  Thank you.  You may step down.  Anything

10    further by either side.

12:19:41  11         MR. BROWNBACK:  No, sir.

12:19:42  12         MR. MCSWEENEY:  No, Your Honor.

12:21:34  13         THE COURT:  Can your client make any bond,

14    Mr. Brownback?

12:21:51  15         MR. BROWNBACK:  He does own that residence, Your

16    Honor.  That's the only major asset that he has, and I don't

17    believe that he has any significant savings or other cash on

18    hand.

12:22:09  19         THE COURT:  Do you have any evidence of other

20    persons that had access to that vehicle?

12:22:14  21         MR. BROWNBACK:  The codefendant who rested his head

22    there at the house.

12:22:19  23         THE COURT:  His son?

12:22:20  24         MR. BROWNBACK:  Yes, sir, and I -- I believe that

25    the vehicle was located at the rear of the property.  I'm not

1   sure, I haven't seen any pictures, but I don't believe that

2   the vehicle was in a carport right next to the house or

3   anything.

12:22:55   4       THE COURT: All right. With respect to Lee Marvin

5   Harris Jr., Mr. Foushee, Court will modify that defendant's

6   bond, require him to post a $2 million secured bond on the

7   condition he is to abide by pretrial electronic house arrest.

12:23:16   8       MR. FOUSHEE: Thank you, Your Honor.

12:23:16   9       THE COURT: Administered by a bondsman, or should

10   the sheriff reinstate that program of Moore County. And he

11   is to have no contact with the codefendants.

12:23:29   12       MR. FOUSHEE: That's to include his father as well?

12:23:33   13       THE COURT: Correct.

12:23:34   14       MR. FOUSHEE: Yes, sir.

12:23:35   15       THE COURT: With respect to Christian Terry, he may

16   be released upon the posting of a $2 million secured bond,

17   also abide by pretrial electronic house arrest, and no

18   contact with the codefendants.

12:23:51   19       MR. CONSTANZA: Thank you, Judge.

12:23:56   20       THE COURT: With respect to Lee Marvin Harris, Sr.,

21   he may be released upon the posting of a $500,000 secured

22   bond, and he's to have no contact with the codefendants.

12:24:12   23       And Mr. Brownback, that's without prejudice as

24   the evidence develops to renew your motion for further bond

25   modification.

| | | |
|---|---|---|
| 12:24:21 | 1 | MR. BROWNBACK: Yes, sir. Thank you. |
| 12:24:22 | 2 | THE COURT: Anything further by either side? |
| 12:24:25 | 3 | MR. BROWNBACK: No, Your Honor. |
| 12:24:27 | 4 | MR. MCSWEENEY: No, Your Honor. Just ask all three |

12:24:21   1       MR. BROWNBACK: Yes, sir. Thank you.

12:24:22   2       THE COURT: Anything further by either side?

12:24:25   3       MR. BROWNBACK: No, Your Honor.

12:24:27   4       MR. MCSWEENEY: No, Your Honor. Just ask all three

5    of these codefendants, their matters get set to the July 9th

6    session.

12:24:33   7       THE COURT: July 9th. Is there, I understand, I

8    assume all three of them being held in the holding cell. Is

9    there any issue with these three defendants being held where

10   they have access to one another in the Moore County detention

11   center?

12:24:54   12      MR. MCSWEENEY: Your Honor, I have not inquired to

13   see if the jail is keeping them separate. I would ask that

14   they be housed in separate units, or have minimal contact;

15   however, the jail, I didn't know how the pods are all set up,

16   but I would ask all efforts be taken where they have no

17   contact.

12:25:16   18      THE COURT: So ordered.

12:25:18   19      MR. MCSWEENEY: Thank you.

12:25:19   20      MR. FOUSHEE: Could I just inquire when can we

21   expect to receive discovery in this case?

12:25:25   22      MR. MCSWEENEY: As soon as I can calculate it all

23   and put it in a format that I can deliver it. I would like

24   to speak with the U.S. attorney's office prior to releasing

25   discovery, but I will use every best effort to get that out

1    in a timely fashion.

12:25:53    2              MR. CONSTANZA:    Thank you.

12:25:53    3                   (Proceedings concluded at 12:25 p.m.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              CERTIFICATION OF TRANSCRIPT

2

3

4

5              This is to certify that the foregoing transcript of

6    proceedings taken at the May 1, 2018 Session of the Moore

7    County Superior Court is a true and accurate transcript of

8    the proceedings taken by me and transcribed by me.  I further

9    certify that I am not related to any party or attorney, nor

10   do I have any interest whatsoever in the outcome of this

11   action.

12             This the 30th day of September, 2018.

13

14   _____

15   CYNTHIA L. HALL, RPR
     Official Court Reporter 19D

16

17

18

19

20

21

22

23

24

25